Rachel E. Kaufman (Cal Bar no. 259353)
rachel@kaufmanpa.com
Avi R. Kaufman*
kaufman@kaufmanpa.com
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

David S. Ratner, Esq.
David Ratner Law Firm, LLP
david@davidratnerlawfirm.com
33 Julianne Court
Walnut Creek, CA 94595
Telephone: (917) 900-2868
Facsimile: (925) 891-3818

*Attorneys for Plaintiff and all others similarly situated*

[Additional counsel appearing on signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RACHEL BULETTE,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**WESTERN DENTAL SERVICES INC.,** a California corporation and **REVSPRING, INC.,**<br><br>*Defendant.* | Case No. 3:19-cv-00612-MMC<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Rachel Bulette ("Bulette" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Western Dental Services Inc. ("Western Dental") and Defendant RevSpring Inc. ("Revspring") (collectively "Defendants") to stop Defendants from

violating the Telephone Consumer Protection Act by sending automated text messages to consumers who have expressly opted out of receiving text messages from Defendants by replying stop, and to otherwise obtain injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## INTRODUCTION

1.      Western Dental is the largest dental practice management company in the West with over 200 offices. It operates offices in California, Arizona, Nevada and Texas.[1]

2.      RevSpring is a customer communication and payment system company.

3.      Western Dental contracted directly with RevSpring in order to enable Western Dental to enagage in text message marketing to new and potential clients.

4.      Automated text messages are regularly sent out by RevSpring on behalf of Western Dental, reminding some consumers about scheduled appointments and soliciting others to schedule an appointment.

5.      The problem this case address is that Defendants continue to send out automated text messages to consumers who have expressly opted out of receiving text messages by replying stop to Defendants' text messages.

6.      In Plaintiff's case, Defendants sent multiple autodialed text messages to her cellular phone notwithstanding Plaintiff's multiple stop requests.

7.      In response to these text messages, Plaintiff files this class action lawsuit seeking injunctive relief, requiring Defendants to cease sending text messages to consumers who have

---

[1] https://www.linkedin.com/company/western-dental-services/about/

opted out of receiving further automated text messages, as well as an award of statutory damages to the members of the Class.

## PARTIES

8.      Plaintiff Bulette is a Hayward, California resident.

9.      Defendant Western Dental is a California corporation headquartered in Orange, California. Defendant conducts business throughout this District, the State of California, and the United States.

10.     Defendant RevSpring is a Delaware corporation headquartered in Livonia, Michigan. Defendant conducts business throughout this District, the State of California, and the United States.

## JURISDICTION AND VENUE

11.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

12.     This Court has personal jurisdiction over the Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants do significant business in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## COMMON ALLEGATIONS

**Defendants Violate the TCPA By Sending Autodialed Text Messages
to Consumers' Cellular Phone Numbers After Consumers Have Opted-Out**

13.     RevSpring sends text messages on behalf of Western Dental using RevSpring's TalkSoft program.  These text messages include automated appointment reminders to clients

1   who have an upcoming appointment and to past clients to solicit them to schedule a new

2   appointment.[2]

3        14.    RevSpring explains how it automates the process of patient outreach, which is

4   used to bring former patients back into the dental clinics:



                                                                             Healthca

Automated clinical outreach can help practices engage with no
shows and bring patients who haven't scheduled their next
visits back into the office. Practices can use automated
outreach to send campaigns to the entire patient population or
customize messages based on the type of service due,
including detailed instructions.             [3]

13        15.    As RevSpring explains, a corporation like Western Dental provides RevSpring

14   with a list of patients that it wants to solicit business from. RevSpring through its TalkSoft

15   system then loads the list into its automated system and the messages are then sent out

---

[3] https://revspringinc.com/healthcare/practices/clinical-outreach/

automatically:

  

4

16.     RevSpring, using its Talksoft platform, sends out automated text messages to

consumers through a three-step process: 1) Upload the list of people's names and phone numbers

into the Talksoft system the business wants to send autodialed text messages to; 2) type out the

content of the message the business wants to broadcast; and 3) schedule the broadcast message

or choose send now to broadcast the text message to the list of phone numbers uploaded.

## Automated Patient Alert System

Send automated phone calls, text messages, and emails from any location using any device with a wireless or internet connection in just three simple steps: **The entire process can take as little as five minutes.**

  

Create a list of the people you need to contact.

Choose a pre-recorded voice message or record a new message on the fly. If sending a text or email, enter the content.

Schedule the broadcast message for your preferred date and time, or choose "Send Now."

5

---

[4] https://revspringinc.com/healthcare/practices/clinical-outreach/
[5] https://revspringinc.com/healthcare/practices/broadcast-messages/

17.    These automated text messages contain opt-out language as part of the text message. For example, at the end of the text message it will state "Reply STOP to opt out." If a consumer responds to the text message by replying STOP, the system is set to confirm the consumer's opt-out with a message "You have successfully been unsubscribed from Talksoft and will receive no further messages. Reply START to resubscribe."



18.    However, despite consumers' explicit stop requests (and confirmation from Talksoft that the consumer has been unsubscribed and will receive no further messages), the system continues to bombard the consumer with text message solicitations as if the consumer had never opted out, which is in violation of the TCPA.

19.    Defendants knowingly sent out these text messages to consumers after that opted out, since Defendants sent a confirmation text acknowledging consumers' opt outs.

20.    Not surprisingly, consumers have voiced their disapproval of receiving these unsolicited text messages even after texting "STOP" like Plaintiff Bulette did. One person complained online stating ""They send you text messages to remind you to make

appointment months after you ask them to stop."[6] Another frustrated consumer wrote: "Message claimed to be from Western Dental for 'Nancy'. 'Reply STOP to opt out'. When I replied stop, I got a warning that charges may apply."[7]

21.     Western Dental benefits from RevSpring continuing to send text messages on its behalf to consumers after they have opted-out.

22.     Western Dental knew, or should have known, that automated text messages were being sent to consumers after they opted out from complaints online and to their office directly, and from the opt-out text message requests sent to them.  Western Dental has also been subject to numerous recent TCPA lawsuits in which the plaintiffs alleged that they received many texts and/or calls from or on behalf of Western Dental despite requests for the communications to stop.

23.     Western Dental and/or RevSpring failed to implement or maintain internal do not call list policies to prevent consumers from being called or texted after they have expressly requested to not receive any more call or texts.

**RevSpring Sends Out Automated Text Messages To Consumers Who Have Expressly Opted Out of Receiving Future Text Messages**

24.     RevSpring sells a series of services to its clients which include automated text message marketing.

25.     Western Dental is one of many customers that RevSpring provides text messaging services for. In fact, RevSpring claims that they have over 2,000 customers across multiple verticals.[8]

---

[6] https://findwhocallsyou.com/8664695955?CallerInfo
[7] https://www.showcaller.global/us/+18664695955
[8] https://revspringinc.com/about/

26.     On information and belief, RevSpring provides a text messaging platform that is systematically flawed and continues to send automated text messages to consumers who have expressly opted out of receiving future text messages.  RevSpring's systematic flaw is likely sending unsolicited text messages to consumers across all of their campaigns similar to Western Dental's campaign.

27.     What is worse is that RevSpring is in the best position to assess that its system is flawed and that it continues to send text messages after consumers opt-out. RevSpring prides itself on its "Analytics & Marketing" and is in the best position to assess whether their opt-outs are working.  RevSpring knew or should have known that their opt-outs were not working for the automated text message.

28.     Plaintiff seeks to redress RevSpring's systematic flaw in their automated text message platform on behalf of herself for all consumers who have received unwanted text messages from RevSpring after they have expressly opted out.

### PLAINTIFF'S ALLEGATIONS

**Plaintiff Received Autodialed Text Messages to Her Cell
Phone Despite Telling Defendants to Stop Texting**

29.     Until 2016, Plaintiff Bulette was a patient of Western Dental.

30.     Beginning in 2017, Plaintiff started receiving autodialed solicitation text messages to her cellular phone from Defendants using shortcode 39837. The first text message stated, "Dear RACHEL, our records indicate it is time for your next dental appointment at Western Dental. Call 866-469-5955 to schedule. Reply STOP to opt out."

31.     Plaintiff then received a second autodialed solicitation text message from Defendants using shortcode 39837 on September 13, 2017 at 1:18 PM stating "Dear RACHEL,

our records indicate it is time for your next dental appointment at Western Dental. Call 866-469-5955 to schedule. Reply STOP to opt out."

32.     On September 19, 2017 at 6:39 PM, Plaintiff sent "Stop" to shortcode 39837 in order to stop receiving solicitation text messages from Defendants. She immediately received a confirmation of her opt-out request:

Sep 13, 2017, 1:18 PM

Dear RACHEL, our records indicate it is time for your next dental appointment at Western Dental. Call 866-469-5955 to schedule. Reply STOP to opt out.

Sep 19, 2017, 6:39 PM

Stop

You have successfully been unsubscribed from Talksoft and will receive no further messages. Reply START to resubscribe

33.     Despite her opt-out request, Plaintiff received another unsolicited, autodialed text message to her cellular phone a few days later on September 26, 2017 at 11:02 AM, again from shortcode 39837 stating, "Dear RACHEL, our records indicate that you have treatment that is incomplete at our WD office. Call 866-482-5219 to schedule. Reply STOP to opt out."

34.     Plaintiff immediately replied "Stop" to this text message as well and received a confirmation that she had been unsubscribed from future text messages.

Sep 26, 2017, 11:02 AM

Dear RACHEL, our records indicate that you have treatment that is incomplete at our WD office. Call 866-482-5219 to schedule. Reply STOP to opt out.



You have successfully been unsubscribed from Talksoft and will receive no further messages. Reply START to resubscribe

35.   Again, despite a second opt-out request, Defendants sent another autodialed text message to Plaintiff's cell phone from shortcode 39837 on February 8, 2018 at 10:15 AM simply stating, "Dear RACHEL,"

36.   On March 7, 2018 at 10:48 PM, Plaintiff received the same exact text message from Defendants using shortcode 39837 stating, "Dear RACHEL,"

37.   On April 12, 2018 at 1:13 PM, Plaintiff received yet another unsolicited, autodialed text message on her cell phone from Defendants using shortcode 39837, this time stating, "Dear RACHEL, our records indicate it is time for your next dental appointment at Western Dental. Call 866-469-5955 to schedule. Reply STOP to opt out."

38.   On May 8, 2018 at 11:05 AM, Plaintiff received another unsolicited, autodialed text message on her cell phone from Defendants using shortcode 39837, stating, "Dear RACHEL, our records indicate it is time for your next dental appointment at Western Dental. Call 866-469-5955 to schedule. Reply STOP to opt out."

39.     On June 1, 2018 at 10:36 AM, Plaintiff received another unsolicited, autodialed text message on her cell phone from Defendants using shortcode 39837, stating, "Dear RACHEL, our records indicate it is time for your next dental appointment at Western Dental. Call 866-469-5955 to schedule. Reply STOP to opt out."

40.     On August 9, 2018 at 12:14 PM, Plaintiff received another unsolicited, autodialed text message on her cell phone from Defendants using shortcode 39837, stating, "Dear RACHEL, our records indicate it is time for your next dental appointment at Western Dental. Call 866-469-5955 to schedule. Reply STOP to opt out."

41.     On October 11, 2018 at 11:26 AM, Plaintiff received another autodialed text message on her cell phone from Defendants using shortcode 39837, this time stating, "Dear RACHEL, . Reply STOP to stop."

42.     On December 5, 2018 at 3:13 PM, Plaintiff received another unsolicited, autodialed text message on her cell phone from Defendants using shortcode 39837, this time stating, "Dear RACHEL, we miss you! Call us today at 866-469-5955 to schedule yr next cleaning or treatment at Western Dental. Reply STOP to opt out."

43.     On December 27, 2018 at 11:02 AM, Plaintiff received another unsolicited, autodialed text message on her cell phone from Defendants using shortcode 39837, this time stating, "Dear RACHEL, start the new year w a healthy smile! Call 866-469-5955 to schedule yr next cleaning or treatment at Western Dental. Reply STOP to opt out"

44.     On January 17, 2019 at 10:33 AM, Plaintiff received another unsolicited, autodialed text message on her cell phone from Defendants using shortcode 39837, this time stating, "Dear RACHEL, start the new year w a healthy smile! Call 866-469-5955 to schedule yr next cleaning or treatment at Western Dental. Reply STOP to opt out"

45.     Plaintiff replied to the January 17, 2019 text with "Stop." She received an immediate response stating, "You have successfully been unsubscribed and will receive no further messages. Reply START to resubscribe."

46.     The majority of the text messages ask Plaintiff to call 866-469-5955 to schedule a new appointment. Phone number 866-469-5955 belongs to and/or is controlled by Western Dental and/or RevSpring.

47.     Plaintiff does not have a current relationship with Western Dental or RevSpring or any of their affiliated companies, and has expressly withdrawn any consent Western Dental or RevSpring may have had to text her.

48.     In sending the unsolicited text messages at issue, Defendants used an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator.  This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "STOP," the text messages' commercial and generic content, that substantively identical texts were sent to multiple recipients, and that they were sent from a short code, which is consistent with the use of an automatic telephone dialing system to send text messages.

49.     The unauthorized text messages sent by Defendants, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Bulette's use and enjoyment of her phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

50.     Seeking redress for these injuries, Bulette, on behalf of herself and a Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed text messages to cellular telephones.

## CLASS ALLEGATIONS

**Class Treatment Is Appropriate for Plaintiff's TCPA Claims**

51.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following Classes:

> **Western Dental Stop Class**: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message (2) on behalf of Western Dental (3) on the person's cellular telephone number, (3) using a text messaging platform substantially similar to the text messaging platform RevSpring used to text message Plaintiff, (4) *after* that person opted-out of text messages and did not resubscribe.

> **Western Dental Internal Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action (1) RevSpring on behalf of Wester Dental text messaged on their residential telephone number more than one time in a twelve-month period, (2) for substantially the same reason that Defendants text messaged Plaintiff after Plaintiff opted-out.

> **RevSpring Stop Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant RevSpring (2) sent a text message, (2) on the person's cellular telephone number, (3) using a text messaging platform substantially similar to the text messaging platform RevSpring used to text message Plaintiff, (4) *after* that person opted-out of Defendant Rev Spring's text messages and did not resubscribe.

> **RevSpring Internal Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant RevSpring text messaged on their residential telephone number more than one time in a twelve-month period, (2) for substantially the same reason that Defendants text messaged Plaintiff after Plaintiff opted-out.

52.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their

---

SECOND AMENDED CLASS ACTION COMPLAINT

-13-

subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their

parents have a controlling interest and their current or former employees, officers and directors;

(3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion

from the Classes; (5) the legal representatives, successors or assigns of any such excluded

persons; and (6) persons whose claims against Defendants have been fully and finally

adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions

following appropriate discovery.

53.    **Numerosity**: On information and belief, there are hundreds, if not thousands of

members of the Classes such that joinder of all members is impracticable.

54.    **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiff and the Classes, and those questions predominate over any

questions that may affect individual members of the Classes. Common questions for the Classes

include, but are not necessarily limited to the following:

> (a) whether Defendants failed to implement policies and procedures for maintaining a list of persons who request not to be called by Defendants before engaging in telemarketing;
>
> (b) whether Defendants utilized an automatic telephone dialing system to send text messages to Plaintiff and the class members;
>
> (c) whether Defendants continued to send autodiated text messages to Plaintiff and class members after they opted-out of receiving additional text messages;
>
> (d) whether Defendants' conduct violates the TCPA; and
>
> (e) whether Plaintiff and members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

55.    **Adequate Representation**: Plaintiff will fairly and adequately represent and

protect the interests of the Classes, and has retained counsel competent and experienced in class

actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendants have no

defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Classes.

56.     **Appropriateness**: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Western Dental Stop Class)**

57.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them by reference herein.

58.     Defendant Western Dental and/or its agents sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Stop Class using an autodialer after Plaintiff and members of the Class opted-out of receiving additional text messages.

59.     These solicitation text messages were sent *en masse* without the consent of the Plaintiff and the other members of the Stop Class to receive such solicitation text messages.

60.     Defendant Western Dental has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Stop Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

61.     In the event that the Court determines that Defendant Western Dental's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Stop Class.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the RevSpring Stop Class)

62.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them by reference herein.

63.     Defendant RevSpring and/or its agents sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the RevSpring Stop Class using an autodialer after Plaintiff and members of the Class opted-out of receiving additional text messages.

64.     These solicitation text messages were sent *en masse* without the consent of the Plaintiff and the other members of the Stop Class to receive such solicitation text messages.

65.     Defendant RevSpring has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Stop Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

66.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Stop Class.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Western Dental Internal Do Not Call Class)**

67.     Plaintiff incorporate by reference all above paragraphs as though fully repeated herein.

68.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

---

SECOND AMENDED CLASS ACTION COMPLAINT
-18-

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

69.     RevSpring on behalf of Western Dental sent marketing text messages to Plaintiff and members of the Western Dental Internal DNC Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow RevSpring on behalf of Western Dental to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

70.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

71.     As a result of RevSpring's failures, Western Dental has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant Western Dental's conduct, Plaintiff and the other

members of the Western Dental Internal Do Not Call Class are each entitled to up to $1,500 per violation.

### FOURTH CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the RevSpring Internal Do Not Call Class)**

72.     Plaintiff incorporate by reference all above paragraphs as though fully repeated herein.

73.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the

---

SECOND AMENDED CLASS ACTION COMPLAINT

person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

74.     RevSpring sent marketing text messages to Plaintiff and members of the RevSpring Internal DNC Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow RevSpring to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

75.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

76.     RevSpring has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of RevSpring's conduct, Plaintiff and the other members of the RevSpring Internal Do Not Call Class are each entitled to up to $1,500 per violation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Bulette, individually and on behalf of the Classes, prays for the following relief:

a)  An order certifying the Classes as defined above, and appointing Plaintiff as the representative of the Classes and her attorneys as Class Counsel;

b)  An award of actual and/or statutory damages and costs;

c)  An order declaring that Defendants' actions, as set out above, violate the TCPA;

d)  An injunction requiring Defendants' to cease all unsolicited texting activity, to implement sufficient TCPA related policies and procedures, and to otherwise protect the interests of the Classes; and

e)  Such further and other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**RACHEL BULETTE**, individually and on behalf of those similarly situated individuals

Dated: July 5, 2019

By:   _/s/ Rachel E. Kaufman_
Rachel E. Kaufman (Cal Bar no. 259353)
rachel@kaufmanpa.com
Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127

---

SECOND AMENDED CLASS ACTION COMPLAINT

-22-

Telephone: (305) 469-5881

David S. Ratner, Esq.
David Ratner Law Firm, LLP
33 Julianne Court
Walnut Creek, CA 94595

Stefan Coleman*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Attorneys for Plaintiff and the putative Classes*

*\*Admitted pro hac vice*