SQUIRE PATTON BOGGS (US) LLP
Eric J. Troutman (State Bar # 229263)
eric.troutman@squirepb.com
Emily L. Wallerstein (State Bar # 260729)
emily.wallerstein@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone:   +1 213 624 2500
Facsimile:   +1 213 623 4581

Attorneys for Defendant
REVSPRING, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL BULETTE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WESTERN DENTAL SERVICES, INC, a California corporation and REVSPRING, INC.,<br><br>Defendants. | Case No. 3:19-cv-00612-MMC<br><br>**DEFENDANT REVSPRING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:           October 11, 2019<br>Time:          9:00 a.m.<br>Courtroom:  7<br>Judge:   The Honorable Maxine M. Chesney |

1 **TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 11, 2019 at 9:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 7 of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable Maxine M. Chesney, Defendant RevSpring, Inc. ("RevSpring") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing Plaintiff Rachel Bulette's ("Plaintiff") Second Amended Complaint ("SAC" or "Complaint") on the grounds that Plaintiff has failed to plausibly allege claims for violation of the Telephone Consumer Protection Act ("TCPA") against RevSpring and that the TCPA is unconstitutional as applied.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and records on file herein, and on any oral argument or evidence that may be presented at the hearing on this Motion.

Dated: August 30, 2019                                    SQUIRE PATTON BOGGS (US) LLP


By:  */s/ Eric J. Troutman*
        Eric J. Troutman
Attorney for Defendant
REVSPRING, INC.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. PLAINTIFF'S ALLEGATIONS ...................................................................................... 2

III. ARGUMENT ..................................................................................................................... 3

    A. Federal Rule of Civil Procedure 12(b)(6) Standard ................................................ 3

    B. Plaintiff Fails to Allege Facts Sufficient to Support the Use of an ATDS. ............ 3

    C. Plaintiff Cannot Bring a Private Claim Based on Alleged Violation of DNC Regulations .............................................................................................................. 9

IV. CONCLUSION ................................................................................................................ 11

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

# **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*ACA Int'l v. FCC*
  885 F.3d 687 (D.C. Cir. 2018) ..................................................................................................8

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)...............................................................................................................3, 4

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007).....................................................................................................................3

*Boydston v. Asset Acceptance LLC*
  496 F. Supp. 2d 1101 (N.D. Cal. 2007) ..................................................................................10

*Braver v. NorthStar Alarm Servs., LLC*
  2019 U.S. Dist. LEXIS 118080 (W.D. Okla. July 16, 2019).......................................................10

*Burdge v. Ass'n Health Care Mgmt.*
  2011 U.S. Dist. LEXIS 9879 (S.D. Ohio Feb. 2, 2011)..........................................................9, 10

*Charvat v. NMP, LLC*
  656 F.3d 440 (6th Cir. 2011)....................................................................................................10

*Chevron Oil Co. v. Huson*
  404 U.S. 97 (1971).......................................................................................................................9

*Dominguez v. Yahoo, Inc.*
  894 F.3d 116 (3d Cir. 2018).....................................................................................................4, 7

*Drew v. Lexington Consumer Advocacy, LLC*
  2016 U.S. Dist. LEXIS 52385 (N.D. Cal. Apr. 18, 2016) ........................................................10

*Duran v LaBoom Disco*
  369 F. Supp. 3d 476, 490 (E.D.N.Y. 2019)..............................................................................5, 6

*Eclipse Mfg. Co. v. M & M Rental Ctr., Inc.*
  2006 U.S. Dist. LEXIS 39943 (N.D. Ill. May 26, 2006) ............................................................9

*Fernandez-Vargas v. Gonzales*
  548 U.S. 30, 126 S. Ct. 2422 (2006).........................................................................................8

*Gary v. TrueBlue, Inc.*
  2018 U.S. Dist. LEXIS 128782 (E.D. Mich. Aug. 1, 2018) .......................................................4

*Glauser v. GroupMe, Inc.*
  2015 U.S. Dist. LEXIS 14001 (N.D. Cal. Feb. 4, 2015)............................................................4

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Grayned v. City of Rockford*
    408 U.S. 104 (1972) .......................................................................................................... 6

*Herrick v. GoDaddy.com LLC*
    312 F. Supp. 3d 792, 803 (D. Ariz. 2018) ............................................................... 5, 8

*j2 Glob. Communs., Inc. v. Protus IP Sols.*
    2008 U.S. Dist. LEXIS 126245 (C.D. Cal. Jan. 14, 2008) ....................................... 10

*Kalowski v. Cty. of Sacramento*
    2018 U.S. Dist. LEXIS 21907 (E.D. Cal. Feb. 8, 2018) ............................................ 3

*Kolender v. Lawson*
    461 U.S. 352 (1983) .............................................................................................. 6, 7

*Kwan v. SanMedica Int'l*
    854 F.3d 1088 (9th Cir. 2017) ................................................................................... 3

*Landgraf* v. *USI Film Prods.*
    511 U.S. 244 (1994) ................................................................................................... 8

*Luna v. Shac, LLC*
    122 F. Supp. 3d 936, 941 (N.D. Cal. 2015) ............................................................... 4

*Marks v. Crunch San Diego, LLC*
    904 F.3d 1041 (9th Cir. 2018) ...................................................................... 4, 7, 8, 9

*McKenna v. WhisperText*
    2015 U.S. Dist. LEXIS 120090 (N.D. Cal. Sept. 9, 2015) ......................................... 5

*NAACP v. Button*
    371 U.S. 415 (1963) ................................................................................................... 6

*Nece v. Quicken Loans, Inc.*
    2018 U.S. Dist. LEXIS 42356 (M.D. Fla. Mar. 15, 2018) ....................................... 10

*Nunez-Reyes v. Holder*
    646 F.3d 684 (9th Cir. 2011) ..................................................................................... 9

*Pareto v. Fed. Deposit Ins. Corp.*
    139 F.3d 696 (9th Cir. 1998) ..................................................................................... 3

*Ramos v. Hopele of Fort Lauderdale*
    334 F. Supp. 3d 1262, 1273 (S.D. Fla. Aug. 16, 2018) .......................................... 5, 6

*Reno v. Am. Civil Liberties Union*
    521 U.S. 844 (1997) ................................................................................................... 6

*Sessions v. Barclays Bank Delaware*
    317 F. Supp. 3d 1208, 1214 (N.D. Ga. 2018) ............................................................ 4


*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*
    455 U.S. 489 (1992) ................................................................................................................7

*Worsham v. Travel Options, Inc.*
    2016 U.S. Dist. LEXIS 118774 (D. Md. Sep. 1, 2016),
    *aff'd*, 678 F. App'x 165 (4th Cir. 2017) ...............................................................................9, 10

**Federal Statutes**

47 U.S.C.
    Section 227 - Telephone Consumer Protection Act ("TCPA") ..........................................1, 8, 9
    Section 227(a)(1) ..................................................................................................................4, 7
    Section 227(b) ....................................................................................................................6, 10
    Section 227(b)(1) .......................................................................................................................3
    Section 227(b)(1)(A)(iii) .......................................................................................................1, 3
    Section 227(b)(3) ....................................................................................................................10
    Section  227(c) .......................................................................................................................10
    Section 227(c)(5) ..............................................................................................................1, 2, 9
    Section 227(d) ....................................................................................................................9, 10

47 C.F.R.
    Section 64.1200(d) .........................................................................................................9, 10, 11
    Section 64.1200(d)(4) ............................................................................................................10

Federal Rule of Civil Procedure
    Rule 2(b)(6) .............................................................................................................................3

**Other Authorities**

30 FCC Rcd 7961 (F.C.C. July 10, 2015) ...................................................................................1

United States Constitution
    First Amendment ..................................................................................................................6, 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff alleges that RevSpring violated the TCPA by sending text messages to her cellular phone on behalf of Western Dental Services, Inc. ("Western Dental") using an automatic telephone dialing system ("ATDS" or "autodialer") after she opted-out of additional messages. Specifically, Plaintiff asserts, in her Second Cause of Action, that RevSpring violated section 227(b)(1)(A)(iii) by sending the messages and, in her Fourth Cause of Action, that RevSpring violated section 227(c)(5) by failing to implement internal do-not-call ("DNC") procedures as required by federal regulations.[1]  But Plaintiff's claims against RevSpring must be dismissed because Plaintiff's SAC fails to plausibly state a claim for relief under the TCPA.

First, rather than plausibly allege usage of an ATDS here, Plaintiff alleges that RevSpring's technology requires at least three steps of human intervention that contradict any allegation of "automatic" dialing.  Despite the evolving definition of an ATDS, the FCC has repeatedly stated the defining feature of an ATDS is not simply the capacity to dial numbers but rather the capacity to dial numbers *without human intervention*.  30 FCC Rcd 7961, 7975 (F.C.C. July 10, 2015) (internal quotation marks omitted) ("the Commission has also long held that the basic functions of an autodialer are to dial numbers without human intervention . . .").  Indeed, a number of recent court decisions support the conclusion that the level of human intervention required to send a text message via a platform like RevSpring's TalkSoft technology – as described in Plaintiff's own allegations – places it outside the ambit of the TCPA.

Given the uncertainty regarding the definition of an ATDS, Plaintiff's claim fails because section 227(b)(1)(A)(iii) of the TCPA is unconstitutionally vague as applied to RevSpring's technology.  As the allegations of the Complaint make clear, RevSpring's technology requires a great deal of human intervention. During the relevant period of time where the text were alleged to have been sent—September 2017 and January 2019—the FCC's "human intervention" rulings definitively authorized the texts at issue.  RevSpring acknowledges that the law has evolved in the meantime but if the current law is found to encompass RevSpring's technology—and it does not—

---

[1] The First and Third Causes of Action in the SAC assert separate claims against Western Dental.

- 1 -   DEF. REVSPRING'S NOTICE AND MOTION
TO DISMISS 2ND AMENDED COMPLAINT
*CASE NO. 3:19-CV-600612-MMC*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

application of the TCPA's amorphous standards retroactively to conduct that was seemingly legal at the time it was taken is unconstitutional.

While those issues are somewhat complex and nuanced, one issue is very simple. Plaintiff's Fourth Cause of Action under section 227(c)(5) fails because it is based exclusively on the technical and procedural safeguards provided in TCPA regulations that do not provide for a private right of action. Because Plaintiff fails to plausibly allege that RevSpring used an ATDS to send the text messages at issue and cannot bring a claim based on insufficient DNC procedures, Plaintiff has failed to state a claim for relief against RevSpring. The Court should therefore dismiss all claims against RevSpring in the SAC.

## II.  PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations are taken as true solely for the purposes of this Motion:

According to the SAC, RevSpring sends text messages on behalf of Western Dental using RevSpring's TalkSoft program. SAC ¶ 13. These text messages include automated appointment reminders to clients who have an upcoming appointment and messages to past clients to request that they schedule a new appointment. *Id.*

Plaintiff contends that RevSpring sent the text messages at issue on behalf on Western Dental using "hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator." *Id.* at ¶ 48. However, Plaintiff alleges that RevSpring uses its TalkSoft program to send text messages to consumers through a three-step process:

> 1) Upload the list of people's names and phone numbers into the Talksoft system the business wants to send autodialed text messages to; 2) type out the content of the message the business wants to broadcast; and 3) schedule the broadcast message or choose send now to broadcast the text message to the list of phone numbers uploaded.

*Id.* at ¶ 16. As shown below, this three step process demonstrates that human intervention was used to send the texts at issue.

Plaintiff also asserts that RevSpring sent telemarketing texts on behalf of Western Dental without a DNC policy in place. *Id.* at ¶¶ 23, 74. Plaintiff is mistaken factually and legally in

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

making this assertion but RevSpring does not challenge these allegations at this point in the proceeding, except—as set forth below—to highlight the absence of a private right of action for such calls.

## III. ARGUMENT

### A. Federal Rule of Civil Procedure 12(b)(6) Standard

To survive a motion to dismiss, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (citations omitted). The court must accept well pleaded factual allegations as true, but "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

In addition, Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed when it "has not nudged [the] claims . . . across the line from conceivable to plausible." *Id.* at 680 (internal quotation marks omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Kalowski v. Cty. of Sacramento*, 2018 U.S. Dist. LEXIS 21907, at *5 (E.D. Cal. Feb. 8, 2018) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). Here, Plaintiff's SAC fails to satisfy this standard and must therefore be dismissed.

### B. Plaintiff Fails to Allege Facts Sufficient to Support the Use of an ATDS.

In the Second Cause of Action, Plaintiff asserts a claim against RevSpring pursuant to 47 U.S.C. § 227(b)(1)(A)(iii) for allegedly sending unsolicited text messages to Plaintiff's cellular phone using an autodialer. SAC ¶¶ 63-66. The TCPA prohibits calls/texts made without consent (unless made for an emergency purpose) using an ATDS or an artificial or prerecorded device. *See* 47 U.S.C. § 227(b)(1). But Plaintiff's SAC lacks any factual allegations from which the Court could plausibly infer that RevSpring is liable under the TCPA for the texts of which Plaintiff complains. Indeed, rather than allege any facts that would show that RevSpring sent texts using an

1  ATDS, Plaintiff alleges facts which indicate that RevSpring's system **does not** qualify as an
2  ATDS. Thus, Plaintiff's TCPA claim must be dismissed, as it does not include any factual allegations
3  (because there are none) that "nudge[] [her] claims . . . across the line from conceivable to plausible."
4  *Iqbal*, 556 U.S. at 680.

5  The TCPA defines an ATDS as "equipment which has the capacity . . . to store or produce
6  telephone numbers to be called, using a random or sequential number generator[,] and to dial such
7  numbers." 47 U.S.C. § 227(a)(1). Despite the clarity of the statutory definition, courts throughout
8  the country have reached conflicting conclusions on how to define an ATDS. Most importantly
9  here, the Ninth Circuit held in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018),
10 that merely dialing from a "stored list" of numbers automatically, and without human intervention,
11 qualifies a system as an ATDS. But many courts have taken an entirely different approach with
12 the Third Circuit and several district courts reading the plain language of the statute and defining
13 an ATDS to require a random or sequential number generator. *See, e.g.*, *Dominguez v. Yahoo, Inc.*,
14 894 F.3d 116, 120-21 (3d Cir. 2018); *Sessions v. Barclays Bank Delaware*, 317 F. Supp. 3d 1208,
15 1214 (N.D. Ga. 2018); *Gary v. TrueBlue, Inc.*, 2018 U.S. Dist. LEXIS 128782 (E.D. Mich. Aug. 1,
16 2018).[2]

17 Although *Marks* affords the governing standard here, the Ninth Circuit's ruling did not
18 define what constitutes "automatic" dialing under the TCPA. In particular, the court in *Marks*
19 recognized that "human intervention of some sort is required before an autodialer can begin making
20 calls," but did not go a step further to clarify just how much human intervention negates a finding
21 that the technology or device qualifies as an ATDS. *See id.* at 1052-53.

22 This Court and other courts have provided clarity on the extent of human intervention
23 excluding technology from the definition of an autodialer under the TCPA. *See, e.g.*, *Luna v. Shac,*
24 *LLC*, 122 F. Supp. 3d 936, 941 (N.D. Cal. 2015) (holding that the system at issue was not an ATDS
25 because "drafting the message, determining the timing of the message, and clicking 'send' on the
26 website to transmit the message to Plaintiff" constituted "human intervention"); *Glauser v.*

---

[2] This split of authority demonstrates why this case should be stayed pending the outcome of the FCC's Public Notice proceeding—the FCC may very well adopt a different ATDS formulation. Nonetheless, RevSpring concedes that *Marks* provides the governing standard on this motion.

- 4 -

DEF. REVSPRING'S NOTICE AND MOTION
TO DISMISS 2ND AMENDED COMPLAINT
*CASE NO. 3:19-CV-600612-MMC*

*GroupMe, Inc.*, 2015 U.S. Dist. LEXIS 14001, at *19 (N.D. Cal. Feb. 4, 2015) (finding human intervention was involved in using the GroupMe application where "Welcome Texts" that were automatically triggered by a user action "were sent to plaintiff as a direct response to the intervention of [] the [defendant] group creator" when defendant added plaintiff to the group); *McKenna v. WhisperText*, 2015 U.S. Dist. LEXIS 120090, at *9 (N.D. Cal. Sept. 9, 2015) (holding that equipment was not an autodialer "[i]n light of the need for human intervention"); *see also Herrick v. GoDaddy.com LLC*, 312 F. Supp. 3d 792, 803 (D. Ariz. 2018) (holding that "the 'level of human agency involved in transmitting the text' amount[ed] to essential human intervention that precludes defining the 3Seventy Platform as an ATDS").

Most recently, for example, in *Duran v LaBoom Disco*, 369 F. Supp. 3d 476, 490 (E.D.N.Y. 2019), the court held that the defendant's texting programs did not qualify as autodialers "because they [we]re not capable of dialing numbers without human intervention." There, the defendant's systems required that a human agent "determine [the time to send the message], the content of the messages, and upload the numbers to be texted into the system." *See id.* (citing brief and record evidence in case). In holding that the defendant had not used an ATDS, the court noted that "the human-intervention test turns not on whether the user must send each individual message, but rather on whether the user (not the software) determines the *time* at which the numbers are dialed." *Id.* (emphasis in original) (internal citations omitted).

The court in *Ramos v. Hopele of Fort Lauderdale*, 334 F. Supp. 3d 1262, 1273 (S.D. Fla. Aug. 16, 2018), similarly found that, in determining whether a system qualifies as an ATDS, "the primary consideration . . . is whether human intervention is required at the point in time at which the number is dialed." (Internal citations and quotation marks omitted). In *Ramos*, the texting system at issue could not operate "without a person physically inputting numbers, drafting a message, selecting recipients, choosing a date and time to send the message, and manually hitting a 'send' button." *Id.* at 1275. Acknowledging that "courts routinely determine as a matter of law the amount of human intervention necessary to establish whether a system is an ATDS," the court held that the defendant's system did not qualify as an ATDS because it could not send texts "without a significant amount of human involvement." *Id.* at 1274, 1276.

Here, Plaintiff's SAC shows that RevSpring did not use an ATDS because Plaintiff alleges facts indicating the high level of human intervention required to send texts through RevSpring's platform. In particular, Plaintiff alleges a three-step process required for RevSpring to launch texts, including a human being uploading the list of names and phone numbers, typing out the content of the message, and determining the timing of the texts at issue. SAC ¶ 16. Just as in *LaBoom* and *Ramos*, the level of human intervention required to send the texts at issue here—according to Plaintiff's own allegations—removes RevSpring's technology from the definition of an ATDS under the TCPA. Indeed, the system here operates almost identically to the system at issue in *Ramos*. The amount of human intervention required for RevSpring's system makes Plaintiff's ATDS allegation implausible and compels dismissal of this claim.

Plaintiff has not only failed to allege facts sufficient to plausibly establish that RevSpring used an ATDS but also affirmatively alleged facts that negate any finding of an ATDS as a matter of law. Therefore, Plaintiff has failed to state a claim under section 227(b) of the TCPA, and Plaintiff's Second Cause of Action must be dismissed.

To the extent the FCC's human intervention test is not applied, the TCPA is unconstitutionally vague as applied to RevSpring's technology. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Constitution requires that statutes be set forth with "sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). This definiteness is required to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108. Moreover, exacting precision is required for restrictions on free speech in order to avoid the risk of otherwise chilling constitutionally protected speech. *See NAACP v. Button*, 371 U.S. 415, 432-33 (1963) ("[S]tandards of permissible statutory vagueness are strict in the area of free expression. . . . Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity."); *see also Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 871-72 (1997) (explaining that the vagueness of

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

a "content-based regulation of speech . . . raises special First Amendment concerns because of its obvious chilling effect on free speech.").

Even in a facial vagueness challenge, a statute need not be vague in all applications to be void if it reaches a "substantial amount of constitutionally protected conduct." *Kolender*, 461 U.S. at 359, n. 8 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1992)). The need for definiteness is heightened when affecting constitutionally protected rights as opposed to mere economic behavior. *Village of Hoffman Estates*, 455 U.S. at 498.

The TCPA's ATDS restrictions are unconstitutionally vague. To begin with the Ninth Circuit in *Marks* acknowledged that the statute was ambiguous. 904 F.3d at 1051 (finding the TCPA's statutory text "ambiguous on its face"). It then embarked on a path to disambiguate the statute after determining that the FCC's prior orders—including the "human intervention" test—had been set aside. *See id.* at 1049.

In arriving at its own formulation, it appears that the Ninth Circuit intended it to be co-extensive with the FCC's previous orders. For instance, the Ninth Circuit noted that Congress had not deviated from the FCC's previous interpretations of the TCPA in amending the statute in 2015 as a basis to support its own interpretation of the statute. *Id.* at 1051-52 ("Because we infer that Congress was aware of the existing definition of ATDS, its decision not to amend the statutory definition of ATDS to overrule the FCC's interpretation suggests Congress gave the interpretation its tacit approval."). This suggests that the *Marks* panel believed that its interpretation of the TCPA was substantially identical to the FCC's previous conclusion that dialers that call thousands of numbers at a time, without human intervention, qualify as an ATDS. *See id.* at 1052-53.

To the extent that *Marks* is merely a restatement of the FCC's earlier guidance, as discussed above, RevSpring's platform does not qualify as an ATDS. But to the extent *Marks* moved the ball on what qualifies as an ATDS, then the TCPA is unconstitutional as applied to RevSpring in this suit for two separate reasons.

First, the TCPA failed to give a person of ordinary intelligence adequate notice of what constitutes an ATDS. As written, the statute covers only dialers that call randomly or sequentially, and some courts have so held. *See* 47 U.S.C. § 227(a)(1); *see, e.g.*, *Dominguez*, 894 F. 3d at 121.

1  Problematically, though, other courts have adopted different functionalities, some—such as *Marks*,
2  904 F.3d at 1052—by re-writing the statute to cover all dialers that call "automatically" (another
3  undefined term) from "stored" numbers, and others—such as *Reyes v. BCA Financial Services, Inc.*,
4  312 F. Supp. 3d 1308, 1320 (S.D. Fla. 2018)—by grafting the FCC's vague rulings from 2003 onto
5  the statutory language and without clarifying its meaning.

6  However, the D.C. Circuit unanimously set aside the FCC's broad ATDS interpretation
7  finding that the FCC's own guidance as to what qualifies as an ATDS was shifting and inconsistent
8  over the years. *ACA Int'l v. FCC*, 885 F.3d 687, 700-01 (D.C. Cir. 2018). The D.C. Circuit
9  concluded that the FCC's ATDS interpretation in 2015 was itself an "unreasonably expansive
10 interpretation of the statute" and criticized the FCC's 2015 Order for failing to provide meaningful,
11 reasoned guidance as to the meaning of "using a random or sequential number generator." *Id.* at
12 701. The Court also noted that the FCC's ruling was at war with itself and had failed to clarify
13 "whether a device must itself have the ability to generate random or sequential telephone numbers
14 to be dialed" or whether it is "enough if the device can call from a database of telephone numbers
15 generated elsewhere[.]" *Id.*

16 Further, the D.C. Circuit made clear that the FCC must provide guidance to parties who are
17 "left in a significant fog of uncertainty about how to determine if a device is an ATDS." *Id.* at 703.
18 Thus, the FCC issued a public notice seeking comments on a new definition of ATDS that comports
19 with *ACA International*. *See Consumer and Governmental Affairs Bureau Seeks Comment on*
20 *Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA*
21 *International Decision*, CG Docket Nos. 18-152 and 02-278, DA 18-492 (May 14, 2018).

22 As a result, RevSpring cannot readily determine what type of dialing technology constitutes
23 an ATDS under the statute, and therefore what type of conduct is prohibited. But even if the state
24 of the law were discernable pre-*Marks*, any change brought about by *Marks* toward expanding the
25 statute cannot constitutionally be applied to RevSpring *post hac*. Courts do not apply changes or
26 additions to the law retroactively "when their application 'would impair rights a party possessed
27 when [it] acted, increase a party's liability for past conduct, or impose new duties with respect to
28 transactions already completed.'" *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37, 126 S. Ct. 2422,

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1  2427-28 (2006) (quoting *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 280 (1994)). Accordingly, any shift in law from *Marks*, expanding the definition of an ATDS and the potential for liability under the TCPA, cannot apply retroactively where RevSpring previously acted in reliance on the state of the law when allegedly sending the texts at issue here beginning in September 2017. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 107 (1971) (holding that judicial changes in law apply only prospectively in civil cases announcing new rules of law that "could produce substantial inequitable results if applied retroactively"); *Nunez-Reyes v. Holder*, 646 F.3d 684, 690 (9th Cir. 2011) (applying *Chevron Oil* factors in holding that judicial decision would not apply retroactively); *see also Eclipse Mfg. Co. v. M & M Rental Ctr., Inc.*, 2006 U.S. Dist. LEXIS 39943, at *11 (N.D. Ill. May 26, 2006) (holding that the TCPA's Junk Fax Prevention Act did not apply retroactively where application "would create 'new legal consequences' for senders of fax advertisements" that did not exist under the previous state of the law).

### C. Plaintiff Cannot Bring a Private Claim Based on Alleged Violation of DNC Regulations.

Plaintiff claims that RevSpring violated the DNC provisions of 47 C.F.R. § 64.1200(d) by failing to implement "internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow RevSpring to initiate telemarketing calls." SAC ¶¶ 73-74. Though Plaintiff purports to bring her claim under section 47 U.S.C. § 227(c)(5), regulatory section 47 C.F.R. § 64.1200(d) was enacted pursuant to 47 U.S.C. § 227(d) and provides the technical and procedural standards for TCPA compliance. *See* 47 U.S.C. § 227(d); *see also Worsham v. Travel Options, Inc.*, 2016 U.S. Dist. LEXIS 118774, at *10 (D. Md. Sep. 1, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017) ("[T]he requirements of § 64.1200(d) set forth the procedural standards for telemarketers to maintain their own, company-specific, do-not-call lists and, consequently, appear to fall under the aegis of subsection *d* of the TCPA."); *Burdge v. Ass'n Health Care Mgmt.*, 2011 U.S. Dist. LEXIS 9879, at *10 (S.D. Ohio Feb. 2, 2011) ("[T]he regulations regarding identification and the provision of a telephone number or address found in 64.1200(d)(4) are technical and procedural in nature and were promulgated pursuant to section 227(d) of the TCPA.").

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Though courts in a "handful of decisions" such as *Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011) and *Drew v. Lexington Consumer Advocacy, LLC*, 2016 U.S. Dist. LEXIS 52385, at *34 (N.D. Cal. Apr. 18, 2016), have found that § 64.1200(d) was promulgated under § 227(c), those cases did not analyze the limitations of the federal regulations, which expressly identify the provisions of § 64.1200(d) as "procedures" for DNC policies, and the language of the statutory sections, which identify § 227(d) as "technical and procedural standards." *See Nece v. Quicken Loans, Inc.*, 2018 U.S. Dist. LEXIS 42356, at *23 (M.D. Fla. Mar. 15, 2018). Accordingly, courts have expressly rejected *Charvat* and *Drew* and instead followed the chorus of decisions holding that § 64.1200(d) falls under the purview of § 227(d). *See, e.g.*, *Braver v. NorthStar Alarm Servs., LLC*, 2019 U.S. Dist. LEXIS 118080, at *35 (W.D. Okla. July 16, 2019) (declining to rely upon *Charvat*); *Worsham*, 2016 U.S. Dist. LEXIS 1187774, at *19 (following the reasoning in *Burdge* and declining to adopt *Charvat* and *Drew*, describing both as "without analysis").

But Section 227(d), unlike other portions of the TCPA, does not include a private right of action. *See Boydston v. Asset Acceptance LLC*, 496 F. Supp. 2d 1101, 1110 (N.D. Cal. 2007) ("In contrast to section 227(b)(3), the TCPA does not provide a private right of action for violations of the technical and procedural standards imposed by section 227(d)."); *j2 Glob. Communs., Inc. v. Protus IP Sols.*, 2008 U.S. Dist. LEXIS 126245, at *22 (C.D. Cal. Jan. 14, 2008) (finding that section 227(d) does not authorize a private right of action); *compare* 47 U.S.C. § 227(b) (expressly providing for private right of action in (b)(3)) *with* 47 U.S.C. § 227(b) (making no mention of a private claim). And because 47 CFR § 64.1200(d) was adopted pursuant to section 227(d), rather than section 227(b) or 227(c), section 64.1200(d) does not have a private right of action either and can only be enforced by the government. *See, e.g.*, *Braver*, 2019 U.S. Dist. LEXIS 118080, at *35 (holding "[t]here is no private right of action for alleged violations of §64.1200(d)"); *Worsham*, 2016 U.S. Dist. LEXIS 1187774, at *18-19 ("[T]he Court concludes Worsham does not possess a private right of action as to an alleged violation of 47 C.F.R. § 64.1200(d)(4)."); *Burdge*, 2011 U.S. Dist. LEXIS 9879, at *10 (dismissing claims "[b]ecause [section 227(d)] of the TCPA does not contain a private right of action").

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Consequently, the Court must dismiss the DNC claim against RevSpring in Plaintiff's Fourth Cause of Action because 47 C.F.R. § 64.1200(d) does not provide for a private right of action and thus cannot be the basis for Plaintiff's claim.

### IV. CONCLUSION

For the foregoing reasons, RevSpring respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted.

Dated: August 30, 2019                SQUIRE PATTON BOGGS (US) LLP


By:  */s/ Eric J. Troutman*
         Eric J. Troutman
Attorneys for Defendant
REVSPRING, INC.

010-8829-2219/8/AMERICAS