Rachel E. Kaufman (CA Bar No. 259353)
rachel@kaufmanpa.com
Avi R. Kaufman (*Pro hac vice*)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
*Attorneys for Plaintiff Rachel Bulette and all others similarly situated*
(Additional counsel appearing on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **RACHEL BULETTE,** individually and on behalf of all others similarly situated,<br><br>　　　　　*Plaintiff,*<br><br>*v.*<br><br>**WESTERN DENTAL SERVICES INC.,** et. al,<br><br>　　　　　*Defendants.* | Case Number: 3:19-cv-00612-MMC<br><br>**PLAINTIFF'S NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**<br><br>Hearing Date: March 6, 2020<br>Hearing Time: 9:00 a.m.<br>Courtroom: 7<br>Judge: Maxine M. Chesney |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 1

II. BACKGROUND ................................................................................................... 3

    a. Facts ................................................................................................................ 3

    b. Procedural History ......................................................................................... 3

III. SUMMARY OF THE SETTLEMENT TERMS ................................................. 5

    a. The Settlement Class ...................................................................................... 5

    b. Settlement Consideration ............................................................................... 5

    c. Settlement Administrator ............................................................................... 6

    d. The Notice Plan ............................................................................................. 7

    e. Opt-Out and Objection Procedures ............................................................... 8

    f. Release of Claims .......................................................................................... 9

    g. Calculation of Approved Claim Payments .................................................... 9

    h. Distribution of Settlement Fund .................................................................. 10

    i. Claims Process ............................................................................................. 10

    j. Class Counsel Fees and Expenses and Plaintiff's Service Award .............. 11

IV. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............... 12

    a. The Legal Standard for Preliminary Approval ............................................ 12

    b. The Settlement Satisfies the Criteria for Preliminary Approval ................ 13

        i. The Settlement Agreement is the Product of Serious, Informed, Arm's Length Negotiations ............................................................................. 14

        ii. There Are No Obvious Deficiencies in the Settlement ............................. 16

        iii. The Settlement Provides No Preferential Treatment ............................... 17

        iv. The Settlement Is Within the Range of Possible Approval ..................... 17

    c. Certification of the Settlement Class is Appropriate .................................... 19

    d. The Court Should Approve the Proposed Notice Plan ................................ 22

V. PROPOSED SCHEDULE OF EVENTS ............................................................ 22

VI. CONCLUSION .................................................................................................. 23

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
CASE NO. 3:19-CV-00612-MMC

### CASES

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................... 12, 19

*Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305 (7th Cir. 1980) .............................. 17

*Boring v. Bed Bath & Beyond of Cal. LLC*, No. 12-cv-05259-JST, 2013 U.S. Dist. LEXIS 165909 (N.D. Cal. Nov. 21, 2013) ................................................ 15

*Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2019 U.S. Dist. LEXIS 50817 (N.D. Cal. Mar. 26, 2019) ................................................................... 18

*De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725-JSC, 2019 U.S. Dist. LEXIS 204442 (N.D. Cal. Nov. 25, 2019) .............................................................. 13, 16

*Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS (CKD),  2015 U.S. Dist. LEXIS 137299 (E.D. Cal. Oct. 6, 2015) ................................................................... 18

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) .................................................... 17

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ...................................... 3

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ..................................... 20

*Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) ............................................................................. 17

*In re American Int'l Group, Inc. Securities Litig.*, 689 F.3d 229 (2d Cir. 2012) ...................... 19

*In re Capital One TCPA Litig*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................... 18

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................... 12, 13

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) .......................................................... 17

*Konstantinos Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 5:10-cv-05971 EJD, 2012 U.S. Dist. LEXIS 16287 (N.D. Cal. Feb. 8, 2012) ............................ 15

*Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75 (S.D.N.Y. 1980) ....................................... 18

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ........................... 21

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................... 22

*National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...................... 17

*Ross v. A.H. Robins Co.*, 700 F. Supp. 682 (S.D.N.Y. 1988) ..................................... 13

*Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125 (9th Cir. 2016) .................................. 21

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................. 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................ 12

*Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4, 2010) ............................................................... 15

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ........................... 20

### STATUTES

Fed. R. Civ. P. 23 ......................................................................... *passim*

Telephone Consumer Protection Act, 47 U.S.C. 227 ...................................... *passim*

**OTHER AUTHORITIES**

137 Cong. Rec. 30,821 (1991) ................................................................................ 3

Manual for Compl. Litig. §§ 21.312, 21.632, 21.633 (4th ed. 2004) .............. 12, 19, 22

Newberg on Class Action § 11.41 (4th ed. 2002) ...................................... 12

Newberg on Class Action § 13.13 (5th ed. 2016) ...................................... 13

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
CASE NO. 3:19-CV-00612-MMC

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 6, 2020 at 9:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 7 of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable Maxine M. Chesney, Plaintiff Rachel Bulette, on behalf of herself and a class of similarly situated persons, with the consent of Defendants Western Dental Services, Inc. and RevSpring, Inc., will and hereby does move the Court, by and through its counsel, for entry of an order preliminarily approving the class action settlement set forth in the Parties' Settlement Agreement ("Settlement" or "Agreement"), certifying a class for settlement purposes, and providing for issuance of Notice to the Settlement Class.[1] This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Avi R. Kaufman (including exhibits attached thereto), all pleadings, records and papers on file, and such other matters that may be presented to the Court.

## I.    <u>INTRODUCTION</u>

The Settlement Agreement establishes a non-reversionary Settlement Fund in the amount of $9,700,000 for the benefit of the Settlement Class, which will also be used to pay the settlement costs. In addition to this excellent monetary result, as a direct result of this litigation, Defendants have ceased the practice of texting cellular numbers after receiving "Stop" requests in response to messages sent by or on behalf of Western Dental. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled legal questions.

---

[1] The Agreement is attached as Exhibit 1. All capitalized terms used herein have the same definitions as those defined in the Agreement. Plaintiff anticipates filing the parties' signature pages by Monday, February 3, 2020.

This motion seeks the entry of an order providing for, among other things:

1. Preliminary Approval of the Settlement;

2. Preliminary certification of a Settlement Class and appointment of Plaintiff as Class Representative and Plaintiff's counsel Avi R. Kaufman and Rachel E. Kaufman, Kaufman P.A., and Stefan Coleman, Law Office of Stefan Coleman, P.A., as Class Counsel;

3. Approval of the Settlement Administrator;

4. Approval of the Notice program describing:

   a. The Settlement and the Settlement Class Members' rights with respect to the Settlement;

   b. The proposed Release of claims;

   c. Class Counsel's request for attorneys' fees and expenses and a service award for the Class Representative; and

   d. The procedures for opting-out of and for objecting to the Settlement.

5. Approval of the Claims process; and

6. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval for several reasons. *See* Declaration of Avi R. Kaufman (attached as Exhibit 2) ¶ 2. First, it provides immediate relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Defendants' willingness to continue their vigorous defense of the case. Second, the Settlement was reached only after first engaging in extensive discovery and extensive arm's-length negotiations, including a full-day mediation before mediator Bruce A. Friedman with JAMS in Los Angeles. Third, the Settlement was not conditioned

on any amount of attorneys' fees for Class Counsel or Service Award for Plaintiff, which speaks to the fundamental fairness of the process. Kaufman Decl. ¶¶ 3-5.

For all these reasons, and as further described below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.    BACKGROUND

### a.    Facts

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[2] The TCPA's sponsor described unwanted autodialed and prerecorded calls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).  As a remedial statute that was passed to protect consumers from unwanted automated telephone calls, the TCPA is construed broadly to benefit consumers. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).  Plaintiff initiated this litigation against the Defendants alleging violations of the TCPA, and seeking, *inter alia*, monetary damages.

### b.    Procedural History

On February 4, 2019, Plaintiff filed the Complaint against Western Dental Services, Inc. in this action. [D.E. 1].  On April 10, 2019, Plaintiff filed an Amended Complaint adding an additional claim against Western Dental.  On June 28, 2019, Plaintiff sought leave to file a Second Amended Complaint adding RevSpring as a defendant.

---

[2] Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
CASE NO. 3:19-CV-00612-MMC

On August 30, 2019, RevSpring filed a Motion to Dismiss Non-California Class Members, a Motion to Strike Class Allegations, a Motion to Dismiss, based in part on the Constitutionality of the TCPA, and a Motion to Stay the Proceedings [D.E. 48, 49,50, and 51]. On September 23, 2019, Plaintiff responded in opposition to the four Motions [D.E. 55, 56, 57, and 58]. On September 30, 2019, RevSpring filed Replies as to all of the Motions [D.E. 59, 60, 62, 63]. Both before and after this time, the parties engaged in written first party and third party discovery, the exchange of documents and other information, and Defendants' corporate representative depositions.

After the Motions were fully briefed and after the commencement of discovery, the Parties began settlement negotiations and agreed to engage in mediation. Based on the Parties' analyses of the relative strengths and weaknesses of their cases through formal and informal discovery, on December 4, 2019, the Parties engaged in a full-day, contentious mediation at JAMS in Los Angeles with mediator Bruce A. Friedman, resulting in an agreement in principle to settle the Action. Thereafter, the Parties provided notice of the Parties' agreement to settle the Action. Following nearly two months of further negotiations and further discovery, the Parties resolved all remaining issues, culminating in the Settlement Agreement.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation against Defendants through trial and potentially appeals. Plaintiff's counsel has taken into account the strength of Defendant RevSpring's pending Motions, Defendants' defenses, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, and the inherent delays in such litigation. Plaintiff's counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation, even if successful, may have ultimately delivered none. Based on their evaluation of all

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
CASE NO. 3:19-CV-00612-MMC

of these factors, Plaintiff and Plaintiff's counsel have determined that the Settlement is in the best

interests of Plaintiff and the Settlement Class.

### III.    SUMMARY OF THE SETTLEMENT TERMS

The following provides a summary and discussion of the material terms of the Settlement.

#### a.    The Settlement Class

The proposed Settlement establishes a Settlement Class of:

> All regular users or subscribers to numbers assigned to wireless carriers to which a
> text message was attempted using RevSpring's TalkSoft platform, after RevSpring
> received a text message containing the word "stop" from such number in response
> to a Western Dental text message, within four years of February 4, 2019.

Excluded from the Settlement Class are: (1) the Judge presiding over this action (or the Judge or

Magistrate presiding over the action through which this matter is presented for settlement), and

members of their families; (2) the Defendants, Defendants' respective subsidiaries, parent

companies, successors, predecessors, and any entity in which the Defendants or their parents have

a controlling interest and its current or former officers and directors; (3) persons who properly

execute and file a timely request for exclusion from the class; and (4) the legal representatives,

successors or assigns of any such excluded person(s). Agreement at ¶ 1.1.36.  The Settlement Class

encompasses the putative class members of all four of the putative classes defined in the Second

Amended Complaint.

#### b.    Settlement Consideration

Pursuant to the Settlement Agreement, upon Preliminary Approval, Defendants will

establish a Settlement Fund in the amount of Nine Million Seven Hundred Thousand Dollars

($9,700,000) for the purpose of making all required payments under the Settlement, including

payments for Approved Claims, any approved Fee Award, any approved service award for

Representative Plaintiff, and the costs of reasonable class notice and class administration.  The

Parties agree Defendants' maximum monetary obligation under this Agreement shall not exceed

$9,700,000.  Agreement at Section 4.

Moreover, as a direct result of this litigation, Defendants have stopped the complained of practice of sending text messages to persons after an opt out request is sent.  The harm that the TCPA seeks to redress is consumer privacy violations through unsolicited telemarketing, including text messages, and this litigation and the Settlement accomplish this goal.

### c.  Settlement Administrator

Pending this Court's approval, Epiq Systems will serve as the Settlement Administrator. The Settlement Administrator's responsibilities include:  i. obtaining contact information for Settlement Class members from Defendants; ii. providing Mailed Notice; iii. establishing and maintaining the Settlement Website; iv. providing Long Form Notice through the Settlement Website; v. receiving, evaluating, and processing Claim Forms; vi. advising Settlement Class members if their Claim Forms are deficient; vii. providing reports about the Notice Plan and number and identity of opt-outs (if any) to Class Counsel counsel; viii. responding to any Settlement Class member inquiries; ix. processing all opt-out requests from the Settlement Class; x. at Class Counsel's request in advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that identifies each Settlement Class member who timely and properly requested exclusion from the Settlement Class; xi. performing the duties described in the Agreement, and any other Settlement-administration-related function at the joint instruction of Class Counsel and Defendants; and xii. distributing claim payments to the Settlement Class Members that file Approved Claims, as detailed in the Agreement.  Agreement at Sections 7 and 8.

The anticipated administration costs are $351,898, see Exhibit A attached to the Declaration of Avi R. Kaufman, which will be paid from the Settlement Fund. Those costs are reasonable compared to the size of the Settlement Fund and in light of the costs for First Class Mail notice to thousands of Class Members, plus First Class Mailing of the settlement checks.

### d. **The Notice Plan**

The Settlement Administrator will be responsible for administrating the Notice Plan. The Notice Plan consists of two different components: (1) direct Mailed Notice and (2) Long-Form Notice to be provided on the Settlement Website. Agreement at Section 7. The forms of the proposed Long-Form Notice and Mailed Notice agreed upon by Plaintiff's Counsel and Defendants, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits B and C.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement; a date by which Settlement Class members may object to the Settlement; the process for submission of and a date by which a valid and timely Claim Form must be submitted; Class Counsel's fee application and/or the request for a Service Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents. The Notice Plan here is straightforward, easy to understand for Settlement Class members, and designed to inform members of their rights under the Agreement. Kaufman Decl. ¶ 10.

In connection with the direct Mailed Notice Plan, the Settlement Administrator shall perform reverse telephone number look ups to determine available associated mailing addresses that might exist for any Settlement Class members for whom Western Dental does not have such addresses, shall run addresses through the National Change of Address Database, and shall make reasonable attempts to resend notice to those whose notices are returned as undelivered. The Settlement Administrator shall send direct notice within thirty (30) days after the Court enters the Preliminary Approval Order.

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
CASE NO. 3:19-CV-00612-MMC

e. **Opt-Out and Objection Procedures**

Any Settlement Class Member who does not wish to participate in this Settlement must write to the Settlement Administrator stating an intention to be "excluded" from this Settlement. This written request for exclusion must be sent via first class United States mail to the Settlement Administrator at the address set forth in the Notice and postmarked no later than the Opt-Out Deadline. A request for exclusion must be signed by the Settlement Class Member, and must include the Settlement Class Member's name, address, and the telephone number that allegedly received a text or text messages sent by Defendant RevSpring after the Settlement Class Member texted "stop" after receiving a text from Western Dental during the Settlement Class Period, and must clearly state that the Person wishes to be excluded from the Litigation and the Agreement. A request for exclusion that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the Person serving such a request shall be a member of the Settlement Class and shall be bound as a Settlement Class Member by the Court's Orders in this Litigation and by this Agreement, if approved. The request for exclusion must be personally signed by the Settlement Class Member. So-called "mass" or "class" opt-outs shall not be allowed. Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Defendants, subject to any defenses that Defendants may have against those claims. Agreement at ¶ 10.4.

Settlement Class Members shall have the right to appear and show cause, if they have any reason why the terms of this Agreement should not be given final approval, subject to each of the sub-provisions contained in section 10.2 of the Agreement. Any objection to the Settlement Agreement, including any of its terms or provisions, must be in writing, filed with the Court, with a copy served on Class Counsel, Counsel for Defendants, and the Settlement Administrator at the

addresses set forth in the Notice, and postmarked no later than the Opt-Out Deadline. Settlement Class Members may object either on their own or through an attorney hired at their own expense.

Any objection regarding or related to the Agreement shall contain a caption or title that identifies it as "Objection to Class Settlement in *Bulette v. Western Dental Services, Inc. and RevSpring, Inc.*, No. 3:19-cv-00612-MMC" and also shall contain the following information: (i) the objector's name, address, and telephone number; (ii) the name, address, and telephone number of any attorney for the objector with respect to the objection; (iii) the factual basis and legal grounds for the objection, including any documents sufficient to establish the basis for his or her standing as a Settlement Class Member, including the phone number(s) at which he or she received text(s) covered by this Settlement; and (iv) identification of the case name, case number, and court for any prior class action lawsuit in which the objector and the objector's attorney (if applicable) has objected to a proposed class action settlement. If an objecting party chooses to appear at the hearing, no later than the Opt-Out Deadline, a notice of intention to appear, either in person or through an attorney, must be filed with the Court and list the name, address, and telephone number of the person and attorney, if any, who will appear. Agreement at ¶10.2.

### f.  <u>Release of Claims</u>

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members, agree to the release as defined in Sections 1.1.28 and 9 of the Agreement. The Released Claims are narrowly defined to the subject matter of this action and only release the claims, liabilities, demands, causes of action , or lawsuits of the Settlement Class Members that were brought in the Litigation or that arise from text messages sent, or attempted to be sent, by or on behalf of Defendants within the four years preceding February 4, 2019.

### g.  <u>Calculation of Approved Claim Payments</u>

Each Settlement Class Member who timely submits a valid Claim Form by the Claims

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
CASE NO. 3:19-CV-00612-MMC

Deadline shall be entitled to a single payment in an amount equivalent to his or her *pro rata* share of the Settlement Fund after any approved Fee Award, any approved Service Award, and Settlement Administration Expenses are deducted. Each Settlement Class Member shall be entitled to receive an amount equal to the Settlement Class Recovery divided by the total number of Approved Claims. Agreement at Section 4.

### h. Distribution of Settlement Fund

Within sixty (60) days after the Effective Date, or such other date as the Court may set, the Settlement Administrator shall pay from the Settlement Fund all Approved Claims by check made payable to the Settlement Class Member submitting each Approved Claim, and shall mail the checks via first-class mail.

All payments to Settlement Class Members via check will state on the face of the check that the check will expire and become null and void unless cashed within one hundred eighty (180) days after the date of issuance. To the extent that any checks to Settlement Class Members expire and become null and void, the Settlement Administrator shall distribute the funds associated with those checks on a *pro rata* basis to Settlement Class Members who submitted an Approved Claim and who cashed their checks, if doing so is administratively and economically feasible (i.e., those Settlement Class Members would receive a second distribution of more than $5 after costs of administration). Any remaining monies, including to the extent a second distribution is not administratively feasible, shall escheat to the applicable state. Agreement at ¶ 8.4.

### i. Claims Process

Each member of the Settlement Class who does not timely opt-out from the Settlement shall be a Settlement Class Member and entitled to make a claim. The form of the proposed Claim Form agreed upon by Class Counsel and Defendant, subject to this Court's approval and/or modification, is attached to the Settlement Agreement as Exhibit A. Only one claim per telephone number will

be validated and deemed an Approved Claim. To the extent of a deficiency in a Claim Form, the Settlement Administrator will attempt to notify the Settlement Class Member that the Claim Form was deficient. Any Settlement Class Member who submits an incomplete or inaccurate Claim Form shall be permitted to re-submit a Claim Form.

### j. Class Counsel Fees and Expenses and Plaintiff's Service Award

Defendants have agreed to pay from the Settlement Fund, reasonable attorneys' fees and costs to Class Counsel, and a Service Award to the Class Representative, in amounts approved by the Court.

Class Counsel, on behalf of Representative Plaintiff, shall petition the Court for a Representative Plaintiff incentive award not to exceed $5,000. In the event the Court approves the Settlement, but declines to award a Representative Plaintiff service award in the amount requested by Class Counsel, the Settlement will nevertheless be binding on the Parties and all Settlement Class Members. Agreement at Section 5.

Class Counsel intends to apply to the Court for attorneys' fees totaling not more than one-third of the Settlement Fund ($3,233,333.33) and documented and reasonable expenses and costs not to exceed $25,000.00. Class Counsel's application for fees, expenses, and costs and the request for an incentive award shall be filed no later than thirty-five (35) days prior to the Opt-Out Deadline. In the event the Court approves the Settlement, but declines to award a Fee Award in the amount requested by Class Counsel, the Settlement will nevertheless be binding on the Parties and the Settlement Class Members. Agreement at Section 6.

The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.

# IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

## a.   The Legal Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e).   As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources.  *E.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).   The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *id.*; *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process.  The Court's first step in the process of granting preliminary approval of a settlement is to determine that the proposed settlement class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Compl. Litig.*, § 21.632 (4th ed. 2004). To certify a class, the plaintiff must demonstrate that the proposed class and proposed class representative meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1–4).  Prior to formal class certification, a preliminary fairness determination is appropriate "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal citation omitted).  Given that the Court will have the opportunity to weigh the settlement's strengths and weaknesses with more information at the final approval hearing, the

preliminary approval hearing need not substitute for that level of review. *De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725-JSC, 2019 U.S. Dist. LEXIS 204442, at *27 (N.D. Cal. Nov. 25, 2019); *see also Newberg on Class Actions* § 13.13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). In the second step, after notice to settlement class members and time and opportunity for them to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23.

The Court should take the first step in the process and grant Preliminary Approval of the Settlement. The Settlement is clearly within the range of reasonableness and satisfies all standards for Preliminary Approval.

### b. <u>The Settlement Satisfies the Criteria for Preliminary Approval</u>

Prior to formal class certification, a preliminary fairness determination is appropriate "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (internal citation omitted); *see also Ross v. A.H. Robins Co.*, 700 F. Supp. 682, 683 (S.D.N.Y. 1988) ("A strong initial presumption exists in favor of a proposed settlement where the proponents establish that: (i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; (iii) there has been sufficient discovery to enable counsel to act intelligently; and (iv) the number of objectants or their relative interest is small.").

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
CASE NO. 3:19-CV-00612-MMC

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement. The Settlement was the result of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to any segments of the class. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate. Kaufman Decl. ¶ 11.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to trial. Defendants deny any liability and are willing to litigate vigorously. Kaufman Decl. ¶ 12. The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation against Defendants through trial and potentially appeals. Plaintiff's counsel also has taken into account the strength of Defendants' defenses, difficulties in proving liability, including the legal theories of vicarious liability and agency, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, and the inherent delays in such litigation. Plaintiff's counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Settlement Class. Based on their evaluation of all of these factors, Plaintiff and Plaintiff's counsel have determined that the Settlement is in the best interests of Plaintiff and the Settlement Class, who otherwise may have received nothing. Kaufman Decl. ¶ 9.

### i. The Settlement Agreement is the Product of Serious, Informed and Arm's Length Negotiations

First, the proposed settlement is the product of serious, informed, non-collusive negotiations. Settlement negotiations are generally found to be non-collusive when reached with

the assistance of a third-party neutral, *see, e.g., Boring v. Bed Bath & Beyond of Cal. LLC*, No. 12-cv-05259-JST, 2013 U.S. Dist. LEXIS 165909, at *21 (N.D. Cal. Nov. 21, 2013), and are found to have been informed where the parties exchanged evidence and information prior to negotiations. *See*, *e.g.*, *Konstantinos Moshogiannis v. Sec. Consultants Grp., Inc*., No. 5:10-cv-05971 EJD, 2012 U.S. Dist. LEXIS 16287, at *14 (N.D. Cal. Feb. 8, 2012) (holding that settlement was fair, reasonable, and adequate where, *inter alia*, "the parties conducted a significant amount of informal discovery…"); *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 U.S. Dist. LEXIS 19674, at *16 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery to have a clear view of the strengths and weaknesses of the case and to support the settlement."). Here, Plaintiff served and received responses to written discovery issued to both Defendants, conducted corporate representative depositions of both Defendants, and engaged in the informal exchange of information concerning the claims and Defendants' respective defenses before finalizing the proposed Settlement. Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims and engaged in extensive formal and informal discovery with Defendants. Kaufman Decl. ¶ 4. Class Counsel's review of that discovery and attendant issues enabled them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations. The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. Kaufman Decl. ¶ 13. Furthermore, Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases. Kaufman Decl. ¶ 14 and Exhibit B thereto. Class Counsel zealously represented Plaintiff and the Settlement Class members' interests throughout the litigation and continue to do so. Kaufman Decl. ¶ 15.

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
CASE NO. 3:19-CV-00612-MMC

## ii. <u>There Are No Obvious Deficiencies in the Settlement</u>

The Settlement is reasonable and fair, and there are no obvious deficiencies in the Settlement. Class Counsel are confident in the strength of Plaintiff's case, but are also pragmatic in their awareness of the various defenses available to Defendants, and the risks inherent in the pending motions, trial, and post-judgment appeal. Kaufman Decl. ¶ 6. The success of Plaintiff's claims turn on questions that would arise from the pending dispositive Motions, at class certification, summary judgment, and trial, and during an inevitable post-judgment appeal. Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. Kaufman Decl. ¶ 6.

Moreover, the Settlement provides an excellent result and immediate monetary relief to members of the Settlement Class and includes a comprehensive Notice Plan, as outlined above. Payments for attorneys' fees, expenses, and an incentive award for the class representative are to be paid from the Settlement Fund, but settlement is not conditioned on any such award. The Settlement includes Opt-Out and Objection provisions. Payments from the Settlement Fund that are not successfully delivered to class members will be divided among remaining class members, if administratively feasible, with no reversion of Settlement Funds to Defendants. The release of liability is also narrowly tailored to the claims presented in the action. Agreement at Section 9. The Agreement provides for a Settlement Administrator to coordinate notice to the class, any requests for exclusion, and payments to class members upon final approval. Accordingly, there are no obvious deficiencies with this settlement. *E.g. De Leon v. Ricoh USA, Inc., No. 18-cv-03725-JSC*, 2019 U.S. Dist. LEXIS 204442, at *31 (N.D. Cal. Nov. 25, 2019) (granting preliminary approval to class settlement after analyzing the general settlement provisions and finding there were no obvious deficiencies).

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
CASE NO. 3:19-CV-00612-MMC

### iii. The Settlement Provides No Preferential Treatment

The settlement provides no preferential treatment to any individual member of the proposed settlement class. Under the settlement, everyone in the class is treated exactly the same: each class member seeking to recover a portion of the Settlement Fund must submit the same Claim Form, and each class member submitting a Valid Claim will receive the same *pro rata* distribution from the Settlement Fund. While Plaintiff will be seeking from this Court an incentive award in recognition of the time and effort she spent acting as class representative, such awards are common and in no way preclude preliminary approval. *See*, *e.g.*, *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *28 (N.D. Cal. Apr. 29, 2011).

### iv. The Settlement Is Within the Range of Possible Approval

In evaluating the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080. The monetary relief here and the fact that this litigation directly caused the Defendants to cease the violative practice places the Settlement well within the range of possible approval. Moreover, Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. Courts recognize that the "essence of settlement is compromise," and a settlement need not represent a complete victory for the plaintiffs for it to be approved. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (quoting *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)). Although the TCPA provides for statutory damages of $500 for each violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (noting that it is "well settled law that a proposed settlement may be acceptable even though it amounts to only

a fraction of the potential recovery"). "The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the hope of improving the settlement to meet an objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining. Rather, it is called upon to evaluate the probabilities of success upon a trial and to compare the benefits thereof with the terms of compromise." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

Defendants will pay $9.7 million into a non-reversionary settlement fund to resolve this matter. This amount is significant in its own right, and the amount per Class Member fits within the range of similar settlements. Here, given the anticipated Class Member participation rate, the likely per Class Member recovery is likely to be between $100 and $200. *See Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2019 U.S. Dist. LEXIS 50817, at *12 (N.D. Cal. Mar. 26, 2019) (granting final approval where, based on class member participation, each member's pro rata share will be $33.36); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS (CKD),  2015 U.S. Dist. LEXIS 137299, at *19 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *In re Capital One TCPA Litig*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (providing for payments of $34.60 to each claiming class member).

The settlement in the present case satisfies each of the four factors generally considered by courts in this district on preliminary approval, this Court should—consistent with the Ninth Circuit's strong judicial policy favoring settlement—preliminarily approve the Settlement Agreement.

The $9,700,000.00 available for the Settlement Class is more than reasonable given the complexity of the litigation, and significant risks and barriers that loomed in the absence of settlement including, but not limited to, Defendant RevSpring's pending dispositive Motion class

certification, anticipated summary judgment and *Daubert* motions, trial as well as appellate review following a final judgment. There can be no doubt that this Settlement is a fair and reasonable recovery.  Kaufman Decl. ¶ 16.

### c.  Certification of the Settlement Class is Appropriate

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  For settlement purposes, Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class defined in Section 1 of the Agreement. "[T]he 'settlement only' class has become a stock device in modern class action litigation." *In re American Int'l Group, Inc. Securities Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620.

Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Litig.*, at §§ 21.632, 21.633. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately thousands of persons, and joinder of all Settlement Class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1).

 "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Defendants' sending text messages after class members texted "Stop" – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. The typicality requirement ensures that "the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is present when a defendant acts uniformly toward the class members, where that uniform conduct results in injury to the class members, and where the named plaintiffs suffer a similar injury to that of the class members as a result. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Plaintiff is typical of the Settlement Class members because she received an unsolicited text message from Defendants after texting "Stop" in response to receiving a text message from Western Dental, and because the Settlement Class members will all benefit from the relief provided by the Settlement.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) requires (1) a plaintiff's attorney to be qualified, experienced, and generally able to conduct the proposed litigation; and (2) a plaintiff to not have interests antagonistic to those of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions, and TCPA class actions, in particular. Class Counsel has vigorously litigated this action and will continue to vigorously prosecute this matter through completion. Kaufman Decl. ¶ 15 and Exhibit B thereto.

Rule 23(b)(3)'s predominance requirement tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (internal citation omitted). The Settlement Class readily satisfies the Rule 23(b)(3) predominance requirement because questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member and Defendants' records identify the list of Settlement Class members' telephone numbers. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
CASE NO. 3:19-CV-00612-MMC

### d. The Court Should Approve the Proposed Notice Plan

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Litig.*, § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Manual for Compl. Litig.*, § 21.312.

The Notice program satisfies this standard. As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement. It will advise Settlement Class members of their options for remaining part of the Settlement, for objecting to the Settlement, Class Counsel's attorneys' fee application and/or request for service award, for opting-out of the Settlement, for submitting a claim, and how to obtain additional information about the Settlement. Through the direct Mailed Notice and Settlement Website, the Notice Plan is designed to reach a high percentage of Settlement Class members and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

## V. PROPOSED SCHEDULE OF EVENTS

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered.

Class Counsel propose the following schedule:

| Event | Date |
|---|---|
| Notice Date | No more than 30 days after Preliminary Approval |
| Deadline for filing papers in support of Class Counsel's application for an award of attorneys' fees and expenses | No less than 35 days prior to Opt Out Deadline |
| Deadline for filing Motion for Final Approval | No more than 15 days prior to the Opt Out Deadline |
| Opt-out Deadline | 45 days after the Notice Date |
| Responses to Objections | No more than 7 days prior to the Final Approval Hearing |
| Final Approval Hearing | Approximately 90 days after entry of Preliminary Approval |
| Claims Deadline | 60 days after the Notice Date |

## VI.    **CONCLUSION**

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) preliminarily approve the terms of the Settlement as within the range of fair, adequate and reasonable; (3) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (4) approve the Notice Plan and approve the form and content of the Notices of the Settlement; (5) approve the Claims process; (6) approve the procedures for members of the Settlement Class to exclude themselves from the Settlement or to object to the Settlement; (7) appoint Plaintiff as Class Representative; (8) appoint Plaintiff's counsel Avi R. Kaufman and Rachel E. Kaufman, Kaufman P.A., and Stefan Coleman, Law Offices of Stefan Coleman, P.A., as Class Counsel; and (9) schedule a Final Approval hearing, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith, and determine whether to approve the Settlement and Class Counsel's application for attorneys' fees, costs, and expenses and a service award to the Class Representative. A Proposed Preliminary Approval Order is attached hereto as Exhibit 3.

Date: January 31, 2020                    Respectfully submitted,

                                          By: s/ Rachel E. Kaufman
                                          Rachel E. Kaufman, Esq., CA Bar No. 259353
                                          Avi R. Kaufman, Esq.
                                          KAUFMAN P.A.
                                          400 NW 26th Street
                                          Miami, FL 33127
                                          Telephone: (305) 469-5881
                                          Email: rachel@kaufmanpa.com
                                          Email: kaufman@kaufmanpa.com

                                          Stefan L. Coleman, Esq.
                                          Law Offices of Stefan Coleman, PA
                                          11 Broadway Suite 615
                                          New York, NY  10004-1490
                                          Telephone: 887-333-9427
                                          Fax: 888-498-8946
                                          Email:Law@stefancoleman.com

                                          David S. Ratner, Esq. (SBN 316267)
                                          David Ratner Law Firm, LLP
                                          33 Julianne Court
                                          Walnut Creek, CA 94595
                                          Telephone: (917) 900-2868
                                          Fax: (925) 891-3818
                                          Email: david@davidratnerlawfirm.com

                                          *Counsel for Plaintiff and all others similarly situated*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 31, 2020, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF, and it is being served this day on all

counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.


                                          */s/ Rachel E. Kaufman*
                                          Rachel E. Kaufman