Rachel E. Kaufman (CA Bar No. 259353)
rachel@kaufmanpa.com
Avi R. Kaufman (*Pro hac vice*)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff Rachel Bulette and the Settlement Class*

(Additional counsel appearing on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RACHEL BULETTE,** individually and on behalf of all others similarly situated,<br><br>        *Plaintiff,*<br><br>*v.*<br><br>**WESTERN DENTAL SERVICES INC.,** et al.,<br><br>        *Defendants.* | Case number: 3:19-cv-00612-MMC<br><br>**PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND INCORPORATED MEMORANDUM OF LAW**<br><br>Hearing Date: July 17, 2020<br>Hearing Time: 9:00 a.m.<br>Courtroom: 7<br>Judge: Maxine M. Chesney |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 17, 2020 at 9:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 7 of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable Maxine M. Chesney, Plaintiff Rachel Bulette will and hereby does move the Court, by and through Class Counsel, for entry of an order granting final

approval of the class action settlement set forth in the Parties' Settlement Agreement, certifying the Settlement Class for settlement purposes, and approving the Notice to the Settlement Class.[1] This Motion is based on and supported by this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Avi R. Kaufman, the Declaration of the Settlement Administrator, all pleadings, records and papers on file, and such other matters that may be presented to the Court.

Date: July 2, 2020                          Respectfully submitted,

                                  By: *s/ Rachel E. Kaufman*
                                      Rachel E. Kaufman, Esq.
                                      Avi R. Kaufman, Esq.
                                      KAUFMAN P.A.

                                      *Attorneys for Plaintiff Rachel Bulette*
                                      *and the Settlement Class*

---

[1] The Amended Class Action Settlement Agreement, filed with the Court as docket entry number 77-1 on March 11, 2020 (referred to herein as the "Agreement" or "Settlement Agreement"), is attached as Exhibit 1. All capitalized terms used herein have the same definitions as those defined in the Agreement.

2

1

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND ................................................................. 2

III.  SUMMARY OF SETTLEMENT TERMS.................................... 3

IV.   IMPLEMENTATION OF THE PROPOSED SETTLEMENT.................. 4

V.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ............................. 5

     a.   The Settlement is Entitled to a Presumption of Fairness, and Is Otherwise Fair, Reasonable, and Adequate ........................................................ 6

        i.   The Strength of Plaintiff's Case Compared to the Risks of Further Litigation Support Final Approval..................................................... 7

        ii.  The Risks of Maintaining Class Action Status Through Trial Support Final Approval ................................................................. 8

        iii. The Monetary and Remedial Relief Provided by the Litigation and Settlement Support Final Approval..................................................... 8

        iv.  Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case ................................................................. 10

        v.   Class Counsel's Experience and Views of the Settlement Support Final Approval ................................................................. 11

        vi.  The Reaction of the Settlement Class Members Supports Final Approval......... 12

     b.   Notice Was the Best Practicable and Was Reasonably Calculated to Inform the Settlement Class of its Rights .................................................. 12

     c.   The Settlement Class Should Be Finally Certified .................................... 13

VI.   CONCLUSION................................................................. 16

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015)..............................................7, 8

*Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 U.S. Dist. LEXIS 137299 (E.D. Cal. Oct. 6, 2015) ................................................................................................................................9

*Franklin v. Wells Fargo Bank, N.A.,* No. 14cv2349-MMA (BGS), 2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29, 2016)..............................................................................................................9

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016) ..........................................9

*Goodwin v. Winn Mgmt. Grp. LLC*, No. 115CV00606DADEPG, 2017 U.S. Dist. LEXIS 117133 (E.D. Cal. July 26, 2017) .....................................................................................................6

*Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101 (N.D. Cal. Jan. 24, 2012) .....................................................................................................................8

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).....................................................14

*In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015)...................6

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ......................................12

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) .....................................5

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ...........................................................5

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)....................................8

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014)........................................................................................................6

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)...................................................................................9

*Konstantinos Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 5:10-cv-05971 EJD, 2012 U.S. Dist. LEXIS 16287 (N.D. Cal. Feb. 8, 2012)...............................................................................10

*Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694 (S.D. Fla. 2018) ............................15

*Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75 (S.D.N.Y. 1980) ......................................................11

ii

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ........................ 14

*Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038 (S.D. Cal. June 20, 2016) ............................................................................................................ 9

*Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604 (E.D. Cal. Nov. 10, 2011) .......................................................................................................... 8, 9

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................... 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ....... 7, 11, 12

*Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615 (9th Cir. 1982) ......................... 7

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .................................... 6, 7

*Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ....................................................................................................................... 6

*Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125 (9th Cir. 2016) ................................. 15

*Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222 (11th Cir. 1998) ............................... 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................... 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ......................... 5

*Wannemacher v. Carrington Mortg. Servs., LLC*, No. SA CV 12-2016 FMO (ANx), 2014 U.S. Dist. LEXIS 199156 (C.D. Cal. Dec. 22, 2014) .......................................................... 7, 8

*Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4, 2010) ............................................................................................... 10

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ................. 14

**Statutes**

Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ............................................... 4

Fed. R. Civ. P. 23 ..................................................................................................... 13

Telephone Consumer Protection Act, 47 U.S.C. § 227 ............................................... 2

iii

1

**Other Authorities**

*Manual for Compl. Lit.* § 21.312 ......................................................................... 12, 13

*Newberg on Class Actions* § 11.41 (4th ed. 2002)......................................................... 5

Motion for Final Approval of Class Settlement
Case no. 3:19-cv-00612-MMC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

As explained in Plaintiff's preliminary approval papers and further herein, the Settlement Agreement, which was reached only after extensive discovery and a full day mediation with JAMS mediator Bruce Friedman, provides an exceptional result to this litigation for the Settlement Class. The Settlement Agreement establishes a non-reversionary Settlement Fund in the amount of $9,700,000 for the benefit of the Settlement Class. In addition to this excellent monetary result, as a direct result of this litigation, Defendants have ceased the practice of texting consumers who have previously requested that Defendants stop texting them.

No Settlement Class Members have objected to the settlement, and only 24 have opted out.  In addition, due to the robust notice efforts, including, among other things, direct mail notice and direct email notice *and* renotice, 30,287 Settlement Class Members have submitted claims. If the Court grants the relief requested in this Motion, each claiming Settlement Class Member will receive more than $225.

Ultimately, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled legal questions, provides Class Members with outstanding relief, and should be finally approved.

Therefore, for the reasons set forth in this memorandum and in the papers previously submitted in support of approval, Plaintiff respectfully requests that the Court grant final approval of the Parties' Settlement Agreement by: (1) finally certifying the Settlement Class; (2) approving the proposed Settlement Agreement as fair, reasonable, and adequate for the certified Settlement Class; (3) determining that adequate notice was provided to the Settlement Class; and (4) approving payment to the claims administrator in an amount not to exceed $400,000.  The Parties request entry of the agreed proposed order filed herewith, attached as Exhibit 2 to this Motion, at or after the fairness hearing.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.     BACKGROUND

Plaintiff's Motion for Preliminary Approval, incorporated by reference, details the basis of Plaintiff's claims, the procedural history, and the Parties' settlement efforts. Preliminary Approval Motion [D.E. 71] at pp. 3-11.  Plaintiff focuses here on those matters pertinent to the instant Motion.

On February 4, 2019, Plaintiff initiated this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, by filing the Complaint against Western Dental Services, Inc. [D.E. 1]. On April 10, 2019, Plaintiff filed an Amended Complaint adding an additional TCPA claim against Western Dental. [D.E. 17]. On June 28, 2019, Plaintiff sought leave to file a Second Amended Complaint adding RevSpring as a defendant, and thereafter filed a Second Amended Complaint on July 5, 2019. [D.E. 37, 39].  *See* Declaration of Attorney Avi R. Kaufman, attached as Exhibit 3, at ¶ 2.

On August 30, 2019, RevSpring filed a Motion to Dismiss Non-California Class Members, a Motion to Strike Class Allegations, a Motion to Dismiss pursuant to Rule 12(b)(6) and based in part on the Constitutionality of the TCPA, and a Motion to Stay the Proceedings. [D.E. 48, 49, 50, and 51].  On September 23, 2019, Plaintiff responded in opposition to the four Motions. [D.E. 55, 56, 57, and 58]. On September 30, 2019, RevSpring filed Replies as to all the Motions. [D.E. 59, 60, 62, 63]. Both before and after this time, the Parties engaged in written first party and third-party discovery, the exchange of documents and other information, and Defendants' corporate representative depositions. *Id*. at ¶¶ 3, 4.

After discovery was underway and RevSpring's Motions were fully briefed, the Parties began settlement discussions and agreed to engage in mediation. *Id*. at ¶ 5. Based on the Parties' analyses of the relative strengths and weaknesses of their cases through discovery, on December 4, 2019, the Parties engaged in a full-day, contentious mediation in Los Angeles with JAMS mediator Bruce A. Friedman, resulting in an agreement in principle to settle the Action. *Id*. Following nearly two months of further negotiations and further discovery, the Parties resolved

2

all remaining issues, culminating in the Settlement Agreement. *Id*. The Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation may have ultimately delivered none given the risks presented by Defendants' defenses, the uncertainties of contested class action litigation, and the everchanging TCPA landscape, including the Supreme Court's and Federal Communications Commission's pending decisions regarding the constitutionality and scope of the TCPA's autodialer provision, on which Plaintiff's claims were primarily predicated. *Id*. at ¶ 6.

### III.   SUMMARY OF THE SETTLEMENT TERMS

The Settlement Agreement establishes a Settlement Class of:

All regular users or subscribers to numbers assigned to wireless carriers to which a text message was attempted using RevSpring's TalkSoft platform, after RevSpring received a text message containing the word "stop" from such number in response to a Western Dental text message, within four years of February 4, 2019.

Agreement at ¶ 1.1.36.  The Settlement Class encompasses the putative class members of all four of the putative classes defined in the Second Amended Complaint. Kaufman Decl. at ¶ 7.

Pursuant to the Settlement Agreement, Defendants have established a non-reversionary Settlement Fund in the amount of Nine Million Seven Hundred Thousand Dollars ($9,700,000) for the purpose of making all required payments under the Settlement, including payments for Approved Claims, any approved Fee Award, any approved service award for Representative Plaintiff, and the costs of reasonable class notice and class administration. *Id*. at ¶ 8.

Moreover, as a direct result of this litigation, Defendants have stopped the complained of practice of sending text messages to persons after they request to opt out request of receiving text messages.  The harm that the TCPA seeks to redress is consumer privacy violations through unsolicited telemarketing, including text messages, and this litigation and the Settlement accomplish this goal. *Id*.

The Settlement Fund will be distributed *pro rata* to Settlement Class Members.  After deducting the estimated notice and administration costs, Class Counsel fees and expenses, and a

Service Award from the Settlement Fund, each Claimant will receive a *pro rata* distribution of more than $225. *Id*. at ¶ 9.

## IV.    IMPLEMENTATION OF THE PROPOSED SETTLEMENT

The Court entered its Order Granting Preliminary Approval of the Settlement on March 13, 2020. [D.E. 78]. Both before and after that date, the Parties have worked diligently with each other and the Claims Administrator to effectuate the terms of the Settlement Agreement.  *Id*. at ¶ 10; Declaration of Settlement Administrator attached as Exhibit 4.

Specifically, on February 10, 2020, in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), the Settlement Administrator sent the CAFA Notice to the United States Attorney General and all State Attorneys General. *Id*. at ¶ 5.

On March 20, 2020, Defendants' counsel provided the Settlement Administrator with one electronic file containing potential Settlement Class Member records.  *Id*. at ¶ 6.  This file contained a list of 276,852 unique phone numbers associated with 284,264 identifiable, potential Settlement Class Members. *Id*. at ¶¶ 6-8.

On April 10, 2020, Epiq launched the Settlement website and the toll-free Settlement information hotline.  *Id*. at ¶¶ 25, 27.  Since that time, there have been more than 34,000 unique visits to the Settlement website and more than 4,000 calls to the toll-free Settlement information hotline.  *Id*. at ¶¶ 26, 28.

On April 13, 2020, Epiq mailed Summary Notices via First Class USPS Mail to the 284,264 identifiable, potential Settlement Class Members with a mailing address, and sent the Email Notices to 208,042 Settlement Class Members with one or more email addresses. *Id*. at ¶¶ 13, 20.

On May 27, 2020, Epiq sent the Reminder Email Notice to 200,711 Settlement Class Members with one or more email addresses who had not already filed a web claim or opted out. *Id*. at ¶ 23.

4

In total, including efforts to remail Summary Notices that were initially returned as undeliverable, Epiq has delivered direct, mailed Summary Notices to more than 91% of Settlement Class Members.  *Id*. at ¶ 16.  In addition, Epiq delivered initial and/or reminder Email Notices to more than half of all Settlement Class Members.  *Id*. at ¶¶ 21, 24.  And in response to these robust notice efforts, 30,287 Settlement Class Members have submitted claims, 24 potential Settlement Class Members have opted out, and no Settlement Class Members have filed or otherwise submitted objections regarding the Settlement.  *Id*. at ¶¶ 29-31.[2]

## V.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources.  *E.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  The policy favoring settlement is especially relevant in class actions in which the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain through a judgment. *See*, *e.g.*, *id.*; *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

In the Ninth Circuit, to assess the fairness of a class-action settlement there are eight factors a court may consider: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the relief provided by the settlement; (5) the extent of discovery completed and the stage of the proceedings at which a settlement was reached; (6) plaintiff's counsel's views of the case in light of their experience; (7) the presence of a governmental participant; and (8) the reaction of the absent members of the proposed settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). In assessing a settlement, a court

---

[2] Although Settlement Class Members were required to file objections with the Court, in an abundance of caution, both Epiq and Class Counsel reviewed all correspondence received by Epiq concerning the Settlement to confirm that no objections were sent to Epiq.   Settlement Administrator Decl. at ¶ 30; Kaufman Decl. at ¶ 11.

is asked to exercise its discretion only "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). An evaluation of the relevant factors for determining whether the Parties' Settlement here is fair, reasonable, and adequate, overwhelmingly supports the granting of final approval.

### a. The Settlement is Entitled to a Presumption of Fairness, and Is Otherwise Fair, Reasonable, and Adequate

"The assistance of an experienced mediator in the settlement process confirms that [a] settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007); *see Goodwin v. Winn Mgmt. Grp. LLC*, No. 115CV00606DADEPG, 2017 U.S. Dist. LEXIS 117133, at *20 (E.D. Cal. July 26, 2017) (finding that a settlement was entitled to a presumption of fairness because it resulted from a full day of mediation with a mediator); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014) (citing *Rodriguez*, 563 F.3d at 965) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The Settlement in this action is the result of a full-day, contentious mediation in Los Angeles with JAMS mediator Bruce Friedman, who has extensive experience assisting parties in resolving TCPA class actions. Kaufman Decl. at ¶ 13; *see In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 809 (N.D. Ill. 2015) (finally approving class action settlement with estimated payout of $39.66 per claiming class member). The Settlement is therefore entitled to a presumption of fairness. But, even without a presumption of fairness, an objective evaluation of the relevant Ninth Circuit factors for determining whether the Settlement is fair, reasonable, and adequate confirms that it is overwhelmingly so. *See Wannemacher v. Carrington Mortg. Servs., LLC*, No. SA CV 12-2016 FMO (ANx), 2014 U.S. Dist. LEXIS 199156, at *16 (C.D. Cal. Dec.

22, 2014) (discussing that a court should "objectively" evaluate the "strengths and weaknesses inherent in the litigation") (internal citation omitted).

### i. The Strength of Plaintiff's Case Compared to the Risks of Further Litigation Support Final Approval

As the Ninth Circuit has instructed, in assessing the probability and likelihood of success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982). There is "no particular formula" to be applied, but the court may presume the parties' counsel and the mediator arrived at a reasonable range of settlement by considering plaintiff's likelihood of recovery. *Rodriguez*, 563 F.3d at 965. Moreover, "[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush." *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1041 (S.D. Cal. 2015) (*citing Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

This case likely would have involved technical expert witnesses, and significant disputes as to procedural, merits, and class certification issues. Kaufman Decl. at ¶ 14. Plaintiff's counsel has taken into account the strength of Defendant RevSpring's pending Motions and anticipated defenses (including relating to the constitutionality of the TCPA and the interpretation of the TCPA's autodialer provision), Defendant Western Dental's defenses (including arbitration), difficulties in obtaining class certification and proving vicarious liability, the general uncertainties and risks of litigation, especially in complex actions such as this one, and the inherent delays in such litigation. *Id.* Class counsel has also taken into account the significant risks posed by a pending Supreme Court ruling as to the constitutionality of the TCPA, in whole or in part, and a pending FCC ruling as to the interpretation of the term "automatic telephone dialing system," either of which could have effectively defeated some or all of Plaintiff's claims. *Id.*

These risks must be balanced against the anticipated Settlement result: if the Settlement is finally approved, claiming Settlement Class Members will each receive more than $225 in

immediate relief.  Additionally, as a direct result of this litigation, Defendants have ceased the practice of texting consumers' cellular phone numbers after receiving "Stop" requests from those consumers. This factor therefore weighs in favor of final approval. *Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604, at *27 (E.D. Cal. Nov. 10, 2011) (immediate recovery for the class is "preferable to lengthy and expensive litigation with uncertain results") (internal citation omitted).

### ii.  The Risks of Maintaining Class Action Status Through Trial Support Final Approval

The risk that the Class may not be certified also favors final approval.  Kaufman Decl. at ¶ 15; *see Wannemacher*, 2014 U.S. Dist. LEXIS 199156, at *18 (finding that where motion for class certification had not been filed the risk that the class would not be certified weighed in favor of approving the settlement); *Couser*, 125 F. Supp. 3d at 1042 (same)*; Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101, at *17-18 (N.D. Cal. Jan. 24, 2012) (finding that since discovery could result in factors that would risk certification of the class this factor weighs in favor of settlement).   In fact, at the first given opportunity, Defendant RevSpring filed a Motion to Strike Class Allegations, and, if litigation had continued, Defendants would have argued that consent and other defenses could not be determined on a class basis, and that, therefore, class certification would be inappropriate.  Kaufman Decl. at ¶ 15.  The risks inherent in proceeding with class litigation weigh strongly in favor of final approval.

### iii.  The Monetary and Remedial Relief Provided by the Litigation and Settlement Support Final Approval

In evaluating the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). "Thus, when analyzing the amount offered in settlement, the Court should examine 'the complete package taken as a whole,' and the amount

8

is 'not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.'" *Morales*, 2011 U.S. Dist. LEXIS 130604, at *28.

The non-reversionary $9,700,000 settlement amount provides much more than "a fraction of the potential recovery" to Settlement Class Members. Class members that submit claims will each receive a monetary payout of more than $225. This is an excellent result that far exceeds the payout in many other court approved TCPA settlements. *See Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive $10 cash or $15 voucher); *Franklin v. Wells Fargo Bank, N.A.,* No. 14cv2349-MMA (BGS), 2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received $71.16); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 U.S. Dist. LEXIS 137299 (E.D. Cal. Oct. 6, 2015) (preliminarily approving TCPA settlement where class members estimated to receive $40). And in addition to achieving significant monetary relief for the Settlement Class's benefit, this litigation has directly resulted in the permanent cessation of Defendants' TCPA violative practices.  Kaufman Decl. at ¶ 8.

As one court noted in approving an unrelated TCPA class settlement:  "[t]he essential point here is that the court should not reject a settlement solely because it does not provide a complete victory to plaintiffs, for the essence of settlement is compromise." *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (approving $34 million TCPA settlement for class of more than 32 million individuals with a per-claimant recovery of $52.50) (citing *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)). Here, as in *Gehrich,* "[i]ndividual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation." *Id*. Defendants, "for [their] part, buy[] peace and mitigate[] risk." *Id*. What the Settlement Class releases through the settlement is related to what the Class gains. In this case, the release from

9

Settlement Class Members to Defendants is narrowly tailored to claims arising from the text messages at issue.  Kaufman Decl. at ¶ 16.

The monetary and remedial relief here is a fair and meaningful outcome in Settlement Class Members' favor, and places the Settlement well within the range of approval.

### iv.  Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case

Discovery has advanced far enough to allow parties to responsibly resolve a case where the parties have exchanged meaningful evidence and information relating to the key issues in the case prior to settlement negotiations. *E.g.*, *Konstantinos Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 5:10-cv-05971 EJD, 2012 U.S. Dist. LEXIS 16287, at *14 (N.D. Cal. Feb. 8, 2012) (holding that settlement was fair, reasonable, and adequate where, *inter alia*, "the parties conducted a significant amount of informal discovery…"); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674, at *16 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery to have a clear view of the strengths and weaknesses of the case and to support the settlement.").

Here, Plaintiff served and received responses to written discovery issued to both Defendants, conducted corporate representative depositions of both Defendants, and engaged in the additional informal exchange of information concerning the claims and Defendants' respective defenses before finalizing the proposed Settlement.  Kaufman Decl. at ¶¶ 4, 5. Class Counsel's review of that discovery and attendant issues enabled them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations.  *Id.* As a result, the Settlement here was the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.  *Id.* at ¶ 17.

10

### v. Class Counsel's Experience and Views
### of the Settlement Support Final Approval

Settlement recommendations of competent counsel are accorded "great weight" by the Courts since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (citations omitted). "The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the hope of improving the settlement to meet an objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. Kaufman Decl. at ¶ 17. Furthermore, Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases. *Id*. & Exhibits A and B thereto. Class Counsel zealously represented Plaintiff and the Settlement Class members' interests throughout the litigation, and continue to do so. *Id*. at ¶ 18. Class Counsel are confident in the strength of Plaintiff's case, but are also pragmatic in their awareness of the various defenses available to Defendants, and the risks inherent in overcoming the pending dispositive Motions, obtaining class certification, and prevailing at trial and on appeal. *Id*. The success of Plaintiff's claims turn on questions that would arise at the current procedural stage, class certification, summary judgment, trial, during an inevitable post-judgment appeal, and in proceedings before the Supreme Court and FCC to which Plaintiff is not a party. *Id*. Under the circumstances, Class Counsel appropriately determined that the benefits of the Settlement outweigh the risks of continued litigation. *Id*. And the absence of any objections from Class

11

Members, and minimal number of opt outs (less than .009% of potential Settlement Class Members), strongly support Class Counsel's conclusion.

### vi.   The Reaction of the Settlement Class Members Supports Final Approval

A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval. *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (granting final approval where 47,336 class members submitted claims, only 57 timely opted out, and six filed objections); *see Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").

Here, the Settlement Class almost unanimously endorses the Settlement.  No Settlement Class Members have objected and only 24 have opted out.  Kaufman Decl. at ¶ 18.  Accordingly, Settlement Class Members' reaction to the Settlement weighs strongly in favor of final approval.

### b.   Notice Was the Best Practicable and Was Reasonably Calculated to Inform the Settlement Class of its Rights

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th

Cir. 1998) (internal quotation marks omitted); *see also Manual for Compl. Lit.* § 21.312 (listing relevant information).

The Notice program satisfies these criteria. As approved by the Court, the Notice Program included direct mail notice and direct e-mail notice and reminder notice.  The notices advised Settlement Class members of the substantive terms of the Settlement, their options for remaining part of the Settlement Class, for objecting to the Settlement or to Class Counsel's Attorneys' fee application and request for Service Award, and for opting-out of the Settlement, and how to obtain additional information about the Settlement.  Kaufman Decl. at ¶¶ 18, 19.  In total, notice reached more than 91% of the Settlement Class.  Settlement Administrator Decl. at ¶¶ 16, 21, 24, 26, 28. As a result, the notice to the Settlement Class was the best practicable notice, because it was intended to, and in fact did, inform the Settlement Class of its rights.  Kaufman Decl. at ¶ 20.

### c.   The Settlement Class Should Be Finally Certified

This Court conditionally certified the Settlement Class for settlement purposes only. [D.E. 78]. For all the reasons set forth in Plaintiff's preliminary approval briefing, incorporated by reference herein, and the Preliminary Approval Order, the Court should finally certify the Settlement Class as it continues to meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).

Specifically, the numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 300,000 persons identifiable from the text messaging logs produced by Defendants in discovery, and joinder of all Settlement Class Members is impracticable. Kaufman Decl. at ¶ 21; *see* Fed. R. Civ. P. 23(a)(1).

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted).  Here, the commonality requirement

13

is readily satisfied. Kaufman Decl. at ¶ 22. There are multiple questions of law and fact that are common to the Settlement Class that would generate common answers. *Id*. These questions are directly guided by Defendants' defenses, including whether the RevSpring text messaging platform used to text message all Settlement Class Members constitutes an autodialer under the TCPA; whether Western Dental is vicariously liable for text messages sent by RevSpring to all Settlement Class Members; whether these text message recipients have Article III standing based on receiving one or more substantively similar text messages; whether Defendants had consent to send the text messages after Settlement Class Members responded to a prior text message with the word "Stop"; and whether Defendants' conduct was willful and knowing. *Id*.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. The typicality requirement ensures that "the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is present when a defendant acts uniformly toward the class members, where that uniform conduct results in injury to the class members, and where the named plaintiff suffers a similar injury to that of the class members as a result. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Plaintiff is typical of the Settlement Class Members because she received unsolicited text messages from Defendants after texting "Stop," is a Settlement Class Member, and will benefit in the same way as other Settlement Class Members from the relief provided by the Settlement. Kaufman Decl. at ¶ 23.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) requires (1) a plaintiff's attorney to be qualified, experienced, and generally able to conduct the proposed litigation; and (2) a plaintiff to not have interests antagonistic to those of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff is a Settlement Class Member and has the same interest as

14

other Settlement Class Members in the relief afforded by the Settlement, and the absent Settlement Class Members have no diverging interests. Kaufman Decl. at ¶ 24. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions, and TCPA class actions, in particular. *Id*. at ¶ 17 and Exhibits A and B. Class Counsel have vigorously litigated this action and will continue to vigorously prosecute this matter through completion. *Id*. at ¶ 25.

Rule 23(b)(3)'s predominance requirement tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Torres v. Mercer Canyons, Inc*., 835 F.3d 1125, 1134 (9th Cir. 2016) (internal citation omitted). The Settlement Class readily satisfies the Rule 23(b)(3) predominance requirement because the questions common to all Settlement Class Members – including whether RevSpring's platform used to text message all Settlement Class Members constitutes an autodialer under the TCPA; whether Western Dental is vicariously liable for text messages sent by RevSpring to all Settlement Class Members; whether these text message recipients have Article III standing based on receiving one or more substantively similar marketing text message; whether Defendants had consent to send the text messages, and whether Defendants acted willfully and knowingly – substantially outweigh any possible issues that are individual to each Settlement Class Member. Kaufman Decl. at ¶ 26. Relatedly, the Settlement Class satisfies Rule 23(b)(3)'s superiority requirement because "common issues of law and fact predominate over any individualized issues" and "the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that a class action would be the superior method of adjudicating" Plaintiff's "claims under the TCPA." *See id*.; *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 702 (S.D. Fla. 2018).

For these reasons, the Court should certify the Settlement Class.

## VI.   CONCLUSION

The Settlement securing $9,700,000 in cash represents an excellent result for the Settlement Class given the risks and obstacles in this Action. Moreover, as a direct result of this litigation, Defendants have stopped the complained of practice of sending text messages to consumers who have requested not to receive further text messages. The Settlement more than satisfies the fairness and reasonableness standard of Rule 23(e), as well as the class certification requirements of Rules 23(a) and (b)(3).   Accordingly, for the foregoing reasons, Plaintiff and Class Counsel respectfully request that this Court (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class; (3) appoint as Class Representative the Plaintiff, Rachel Bulette; (4) appoint as Class Counsel Avi R. Kaufman and Rachel E. Kaufman of Kaufman P.A. and Stefan Coleman of Law Offices of Stefan Coleman P.A.; and (5) enter Final Judgment.

Date: July 2, 2020

Respectfully submitted,

By: *s/ Rachel E. Kaufman*

Rachel E. Kaufman, Esq. (CA Bar No. 259353)
Avi R. Kaufman, Esq.
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com
Email: kaufman@kaufmanpa.com

Stefan L. Coleman, Esq.
LAW OFFICES OF STEFAN COLEMAN, P.A.
11 Broadway Suite 615
New York, NY  10004-1490
Telephone: 887-333-9427
Fax: 888-498-8946
Email:Law@stefancoleman.com

David S. Ratner, Esq. (CA Bar No. 316267)
DAVID RATNER LAW FIRM, LLP
33 Julianne Court

16

Walnut Creek, CA 94595
Telephone: (917) 900-2868
Fax: (925) 891-3818
Email: david@davidratnerlawfirm.com

*Attorneys for Plaintiff Rachel Bulette
and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 2, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Rachel E. Kaufman*
Rachel E. Kaufman

17

Motion for Final Approval of Class Settlement
Case no. 3:19-cv-00612-MMC